## JONES *v.* CLIFTON.

1. Unless existing claims of creditors are thereby impaired, a voluntary settlement of property made by a husband upon his wife is not invalid.
2. The technical reasons of the common law arising from the unity of husband and wife, which would prevent his conveying the property directly to her for a valuable consideration, as upon a contract or purchase, have long since ceased to operate in the case of his voluntary transfer of it as a settlement upon her.
3. The intervention of trustees, in order that the property may be held as her separate estate beyond his control or interference, though formerly held to be indispensable, is no longer required.
4. His reservation of a power of revocation or appointment to other uses does not impair the validity or efficiency of the conveyance in transferring the property to her, to hold until such power shall be executed; nor does it tend to create an imputation upon his good faith and honesty in the transaction.
5. Such a power does not, in the event of his bankruptcy, pass to his assignee.

APPEAL from the Circuit Court of the United States for the District of Kentucky.

The facts are stated in the opinion of the court.

*Mr. Benjamin H. Bristow* and *Mr. James A. Beattie* for the appellant.

*Mr. Martin Bijur, contra.*

MR. JUSTICE FIELD delivered the opinion of the court.

This is a suit by Stephen E. Jones, assignee in bankruptcy of Charles H. Clifton, to set aside two deeds executed by the latter to his wife, and to compel a transfer of the property embraced in them to the complainant. Clifton married in 1870, and was possessed at the time of a large estate. Previously to

his marriage he had taken out three policies of insurance on his life, each for $10,000. Soon after his marriage he took out two additional policies on his life, each for the same amount as the previous ones. In October, 1872, by his deed-poll he conveyed to his wife, in consideration of the love and affection he bore her, to hold as her separate estate, free from his control, use, and benefit, a small parcel of land in the city of Louisville, in the State of Kentucky, and by the same instrument, upon the like consideration, and to be held for the same separate use of his wife, he assigned to her the five policies of insurance on his life. The deed contained a clause reserving to himself the power to revoke the grant and assignment, in whole or in part, and to transfer the property to any uses he might appoint, and to such person or persons as he might designate, and to cause such uses to spring or shift as he might declare.

In April, 1873, by another deed-poll he conveyed to his wife, upon like consideration of love and affection, to hold as her separate estate, free from his control, use, or benefit, two other parcels of land; one consisting of a lot in the city of Louisville, Kentucky, and the other his country place in the county of Jefferson, in that State, comprising thirty-eight acres. The instrument contained a reservation of a power of revocation and appointment to other uses similar to that of the first deed, the power of appointment, however, being somewhat fuller, in providing for its execution either by deed or writing, to take effect as a devise under the Statute of Wills in Kentucky.

These deeds were properly acknowledged and recorded in the counties where the real property was situated. At the time of their execution, the grantor was not in any business, and did not intend engaging in any; was worth about $250,000, and owed only a few inconsiderable debts, which were soon afterwards paid. The deeds were made at the urgent solicitation of his wife, who perceived that his habits were those of an indiscreet young man, somewhat inclined to dissipation, and she was naturally desirous of providing against a possible waste of his property.

In 1873, a general financial panic passed over the country; the values of all kinds of property greatly depreciated in the

market, and land in the country could scarcely be disposed of at any price. By the shrinkage in values and losses in the subsequent years of 1874 and 1875, by his being surety for others, and by bad management, his estate was wasted, and he became hopelessly insolvent. In December, 1875, upon his petition, he was adjudged a bankrupt by the District Court of Kentucky. The complainant was subsequently appointed assignee of his effects, and received an assignment of his property. The proved debts against him amounted to $13,000, and his estate in the hands of the assignee was of little value.

The assignee seeks to set aside the deeds upon various grounds, which, however, may be embraced in the following: 1st, That they are void, because made directly to his wife, without the intervention of a trustee, and so passed no interest to her; 2d, That, by the reservation to the grantor of a power of revocation and appointment to other uses, they were designed to hinder and defraud his future creditors, whilst he retained the control and enjoyment of the property; and, 3d, That the power of revocation and appointment were assets which passed to the assignee in bankruptcy, and can be executed by him for the benefit of creditors.

The questions thus presented, though interesting, are not difficult of solution. The right of a husband to settle a portion of his property upon his wife, and thus provide against the vicissitudes of fortune, when this can be done without impairing existing claims of creditors, is indisputable. Its exercise is upheld by the courts, as tending not only to the future comfort and support of the wife, but also, through her, to the support and education of any children of the marriage. It arises, as said by Chief Justice Marshall in *Sexton* v. *Wheaton,* as a consequence of that absolute power which a man possesses over his own property, by which he can make any disposition of it which does not interfere with the existing rights of others. In that case the husband had purchased a house and lot within the District of Columbia, and taken the conveyance in the name of his wife, and afterwards made improvements upon the property. Subsequently he became involved in debt, and his creditors, having obtained a judgment against him, filed a bill to subject this property to its payment, contending that the con-

veyance to the wife was fraudulent and void as to them, and praying that if the conveyance were upheld the wife might be compelled to account for the value of the improvements. But the court held, after an extended consideration of the authorities, that as the husband was at the time free from debt, the conveyance was to be deemed a voluntary settlement upon her; and as it was not made with any fraudulent intent, it was valid against subsequent creditors; and that the improvements upon the property stood upon the same footing as the conveyance, it appearing that they had been made before the debts were contracted. 8 Wheat. 229. That case does not differ in principle from the one before us. The husband in this, as in that one, was free from debt when he made the deeds, which were voluntary settlements upon his wife. It cannot make any substantial difference that in the case cited the money of the husband was expended in the purchase of the property, and the conveyance was taken in the name of the wife; and that in the present case the property was owned at the time by the husband, and was transferred directly by him to her. The transaction, in its essential features, would have been the same as now, if the husband had sold his lands and invested the proceeds in other property and taken a conveyance in her name. The circuity of the proceeding would not have altered its character nor affected its validity. In all cases where a husband makes a voluntary settlement of any portion of his property for the benefit of others who stand in such a relation to him as to create an obligation, legal or moral, to provide for them, as in the case of a wife, or children, or parents, the only question that can properly be asked is, Does such a disposition of the property deprive others of any existing claim to it? If it does not, no one can complain if the transfer be made matter of public record, and not be designed as a scheme to defraud future creditors. And it cannot make any difference through what channels the property passes to the party to be benefited, or to his or her trustee, — whether it be by direct conveyance from the husband, or through the intervention of others. The technical reasons of the common law arising from the unity of husband and wife, which would prevent a direct conveyance of the property from him to her for a valuable consideration, as upon a

contract or purchase, have long since ceased to operate in the case of a voluntary transfer of property as a settlement upon her. The intervention of trustees, in order that the property conveyed may be held as her separate estate beyond the control or interference of her husband, though formerly held to be indispensable, is no longer required. ' This has been established in courts of equity, says Story, for more than a century, so " that whenever real or personal property is given or devised or settled upon a married woman, either before or after marriage, for her separate and exclusive use, without the intervention of trustees, the intention of the parties shall be effectuated in equity, and the wife's interest protected against the marital rights and claims of her husband, and of his creditors also." Eq. Jur., sect. 1380. And 'he adds to this observation, that "it will make no difference whether the separate estate be derived from her husband himself or a mere stranger; for, as to such separate estate, when obtained in either way, her husband will be treated as a mere trustee, and prohibited from disposing of it to her prejudice." ' There is nothing in the circumstances attending the execution of the deeds in this case which should prevent the full application of the doctrine stated for the protection of the wife's interest against the claim of the assignee for the benefit of the creditors of the husband. *Lloyd* v. *Fulton*, 91 U. S. 485.

The powers of revocation and appointment to other uses reserved to the husband in the deeds in question do not impair their validity or their efficiency in transferring the estate to the wife, to be held by her until such revocation or appointment be made. Indeed, such reservations are usual in family settlements, and are intended " to meet the ever-varying interests of family connections." *Riggs* v. *Murray*, 2 Johns. (N. Y.) Ch. 565. So frequent is the necessity of a change in the uses of property thus settled, arising from the altered condition of the family, the addition or death of members, new occupations or positions in life, and a variety of other causes which will readily occur to every one, that the absence of a power of revocation and of appointment to other uses in a deed of family settlement has often been considered a badge of fraud, and, except when made solely to guard against the extravagance and

imprudence of the settler, such settlements have in many instances been annulled on that ground.  Several of them are cited in the very able and learned opinion of the district judge who presided in the Circuit Court when this case was there heard.  The law in England, by which property can be kept in the same families for many years, has, perhaps, caused greater importance to be given in that country than in this to the insertion in deeds of settlement of a power of revocation and appointment to other uses.  Here the absence of the reservation is only a fact to be explained, and is to have more or less weight, according to the circumstances of each case.  In the case before us the husband does not appear to have had his attention drawn to the reservation.  He desired to have the property settled upon his wife, and he intrusted the preparation of the deed to his counsel.  There was clearly no fraudulent intent on his part; no proof of any such intent was produced or stated to be in existence.  The only fraud asserted in argument to exist is constructive fraud arising from the reservation in question.  But its presence in the deed, as is clear from all the authorities, does not tend to create an imputation upon his good faith and honesty in the transaction. *Huguenin* v. *Baseley*, 14 Ves. 273 ; *Coutts* v. *Acworth*, Law Rep. 8 Eq. 558; *Wollaston* v. *Tribe*, 9 id. 44 ; *Everitt* v. *Everitt*, 10 id. 405; *Hall* v. *Hall*, 14 id. 365 ; *Phillips* v. *Mullings*, Law Rep. 7 Ch. 244; *Hall* v. *Hall*, 8 id. 430 ; *Toker* v. *Toker*, 3 De G., J. & S. 486.

As is very justly observed in the opinion of the court below, the insertion of the power of revocation and new appointment, so far from proving that the grantor contemplated a fraud upon his future creditors, tends to show the contrary.  Should he revoke the settlements, the property would revert to him, and, of course, be liable for his debts; and should he exercise the power of appointment for the benefit of others, the estate appointed would be liable in equity for his debts.

The title to the land and policies passed by the deeds ; a power only was reserved.  That power is not an interest in the property which can be transferred to another, or sold on execution, or devised by will.  The grantor could, indeed, exercise the power either by deed or will, but he could not vest the

power in any other person to be thus executed. Nor is the power a chose in action. It did not, therefore, in our judgment, constitute assets of the bankrupt which passed to his assignee.

*Decree affirmed.*