## Dolan's Estate.

*Transfer inheritance tax — Deed of settlement — Trusts and trustees — Power of revocation—Act of June 20, 1919.*

1. A power of revocation in a voluntary deed of trust is not a property right or chose in action which can be transferred or sold or devised so as to vest it in another.

2. A power of revocation in a deed of trust terminates upon the death of the settlor.

3. The Act of June 20, 1919, P. L. 521, providing for an inheritance tax, is not applicable to gifts which were fully executed before its passage.

4. Where a mother executes a voluntary deed of trust twelve years before her death, reserving a right of revocation and alteration and a right to change the trustee, and granting and transferring to a trust company certain securities to be held in trust from the date of the deed until the end of a period of twenty-one years from and immediately after the death of her last surviving lineal descendant living at the time of her death, with direction to pay the net income to her sons, with further limitations upon their deaths, but without retaining any beneficial interest in herself, the trust fund after the settlor's death is not subject to the transfer inheritance tax under the Act of June 20, 1919, P. L. 521.

Exceptions to opinion of hearing judge, *sur* appeal from tax appraisement made by the Register. O. C. Phila. Co., April T., 1921, No. 471.

LAMORELLE, P. J. (hearing judge).— . . . The material facts follow:

By deed dated May 22, 1908, Sarah Brooke Dolan, wife of Thomas Dolan, acting by and with his consent, granted, sold, assigned, transferred and set over unto Fidelity Trust Company certain securities therein set forth, in trust, from the date of the deed until the end of a period of twenty-one years from and immediately after the death of her last surviving lineal descendant living at the time of her death, to divide the net income into three equal parts, and to pay over the said parts so divided to her three sons, Thomas J. Dolan, Clarence W. Dolan and H. Yale Dolan, for and during the period of their respective lives, with further limitations upon their deaths, unnecessary to recite, except to say that no provision was made for reversion to the settlor. It is shown that, pursuant to the provision of the deed of trust, the trustee took possession of the securities mentioned therein on June 2, 1908, and that

3 D. & C.

it has been acting as such trustee, paying the income to the three equitable life-tenants. It is admitted that the property so transferred was that of Sarah Brooke Dolan, and that she was, at the time of the execution of the deed, a resident of and domiciled in the City of Philadelphia.

Sarah Brooke Dolan died Aug. 17, 1920, more than twelve years after the execution of the deed. At the date of her death the personal estate so transferred as aforesaid was valued at $216,087.63; and on May 1, 1922, the Register of Wills of Philadelphia County, acting on behalf of the Commonwealth, assessed tax on the interest of H. Yale Dolan at 2 per cent., in the sum of $675.17, with what is termed penalty, but evidently means interest thereon, from Aug. 17, 1921, to April 17, 1922, $54.01, all told, $729.18; evidently under the provisions of the Act of June 20, 1919, P. L. 521.

As I understand the pleadings, the one question for determination is whether, in the circumstances, these equitable life estates are liable to tax.

The Supreme Court has recently decided in Oliver's Estate, 273 Pa. 400, that the Act of June 20, 1919, P. L. 521, relating to inheritance tax, is not applicable to gifts which were fully executed before its passage. In the present case, in my judgment, the gift was fully executed prior to the passage of this act. Those who were to enjoy the income, and ultimately the principal, were defined in terms, or by rules to be applied, and no one of them could possibly be the settlor. By her deed she denuded herself of every vestige of property.

The Commonwealth contends that, as there was a right of revocation, tax should be paid. This right of revocation is found in the deed, and reads as follows: "The said Sarah Brooke Dolan, at any time during her life, hereby expressly reserves to herself the right to revoke this trust in its entirety, or from time to time add to, alter or amend the same, as to her shall seem fit."

The settlor never exercised the right of revocation, and I know of no authority where the right of revocation alone was held as tantamount to a property right in the settlor. The cases cited by the Commonwealth do not: Reish v. Com., 106 Pa. 521; Seibert's Appeal, 110 Pa. 329; Du Bois's Estate, 121 Pa. 368, and Lines's Estate, 155 Pa. 378. They are all cases where the dominating thought is that the gifts were made in contemplation of death, or palpably to defeat the Commonwealth's right by colorable transfers, or where the income was reserved to the settlor for life and the actual and physical enjoyment vested for the first time at the death of the settlor or because of such death. In the instant case, the enjoyment and the right to enjoyment vested with the execution of the deed.

Another provision of the deed on which the Commonwealth relies reads as follows: "The said Sarah Brooke Dolan, at any time during her life, and after her death, a majority in interest of the beneficiaries hereunder, may, either with or without cause assigned, cause the removal of the said Fidelity Trust Company, or any succeeding company subsequently appointed, by presenting a petition to the proper court, requesting the removal of such company as trustee, and the appointment of another trust company or person, or both, to fill the vacancy caused by such removal." This is no more than a supervisory control, and is in no sense property.

Another clause called to my attention reads as follows: "During the lifetime of the said Thomas Dolan, no securities hereby transferred shall be sold or any reinvestments of the fund hereby created be made without his approval and consent." This is no more than a recognition of the reputation of the testator's husband as an expert in matters financial. When he died, and he predeceased her, this right, of course, terminated.

### Dolan's Estate.

Section 1 of the Act of June 20, 1919, P. L. 521, reads as follows: "That a tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations, in the following cases: . . . *(c)* When the transfer is of property made by a resident . . . by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death." It is not contended that the present transfer, which was. accomplished some twelve years ago, was made in contemplation of death, and the deed itself is evidence that the property transferred was not intended to take effect in possession or enjoyment at or after the death of the settlor.

What did pass from Mrs. Dolan at her death? Absolutely nothing. A right which she possessed in her lifetime, the right of revocation, was extinguished, but nothing passed, nor was this right property within the meaning of the act of assembly under consideration.

Section 45 of the act defines what is meant by estate and property, and this is the language of the lawmakers: "The words 'estate' and 'property,' wherever used in this act, except where the subject or context is repugnant to such construction, shall be construed to mean the interest of the testator, intestate, grantor, bargainor or vendor passing or transferred to the individual or specific legatee, devisee, heir, next of kin, grantee, donee or vendee, not exempt under the provisions of this act, whether such property be situated within or without this Commonwealth."

That "property" meant something tangible is shown by the fact that where the word "transfer" is used, we speak of an interest in the property, and there can be no interest apart from the thing itself in a right of revocation.

The auditing judge has been furnished with a most excellent brief on the part of the appellant, referring to our consideration cases in New York and in Illinois, particularly the matter of Masury, 28 N. Y. (App. Div.) 580, affirmed 159 N. Y. 532, wherein it was held that the right to revoke and annul a transfer in a deed did not come within the meaning of the law holding that gifts made in contemplation of death or intended to take effect in possession or enjoyment at or after death were taxable.

In People *v.* Northern Trust Co., 289 Ill. 475, wherein a trust was made by the settlor for the benefit of four children, who were to receive the income for life, the settlor reserved the right of revoking the deed, either in whole or in part, and in event of revocation, the property to become that of the settlor. The court, in determining that no tax was due upon his decease, said: "All well-skilled and farseeing lawyers, advising for the benefit of their clients, usually suggest the insertion of such a clause of revocation, and no court, so far as we know, has ever declared that such a deed is testamentary in character, or is to be held to take effect only after death by reason, alone, of such a clause of revocation. In fact, it is not possible for such a clause to have such effect. As a matter of fact, such deed takes effect at once, and continues in full force and effect until actually revoked. If revoked, it can only be revoked during the life of the grantor, and if he does not call into effect such power of revocation during his lifetime, it continues in full force and effect forever after his death. . . . We are entirely unwilling to declare that trust deeds, in the form in which we find those under consideration in this record, render the property conveyed taxable under our Inheritance Tax Act by the mere insertion of a clause of revocation so useful and so long in use for the protection of grantees in such deeds."

3 D. & C.

I am of opinion that the Commonwealth erred in assessing tax, and that no tax is due and payable.

And now, to wit, Nov. 17, 1922, the appeal is sustained, the prayer of the petition granted, and the record is remitted for proper action in accordance with this opinion.

*William M. Boenning*, for Commonwealth, exceptant.

*Clement B. Wood*, contra.

THOMPSON, J., May 1, 1923.—By the trust deed in question, made twelve years before her death, the decedent gave her sons life interests in income, retained no beneficial interest in herself, but reserved the power of revocation, alteration or amendment. The Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, imposes a tax on the transfer of property made in contemplation of the death of the donor, or intended to take effect in possession or enjoyment at or after such death. After the execution of the trust deed, the only property—if such it can be called—which remained in the decedent was the right to revoke, alter or amend. This right was not exercised. The Commonwealth claimed tax on the life interests of the sons, on the ground that these interests, which, during the life of the decedent, were subject to revocation, became at her death absolute and indefeasible.

Taxing laws are to be strictly construed. The property contemplated by the act is not property of a *cestui que* trust, but property of a donor. "That 'property' means something tangible," as said by the auditing judge, "is shown by the fact that where the word 'transfer' is used, we speak of an interest in the property, and there can be no interest apart from the thing itself in a right of revocation." A power of revocation is not a chose in action, and cannot be transferred or sold or devised so as to vest it in another.

Jones *v.* Clifton, 101 U. S. 225 (1879), was a suit by Jones as assignee in bankruptcy of Charles H. Clifton, to set aside two deeds executed by the latter to his wife, and to compel a transfer of the property embraced in them to the complainant. The deeds in question conveyed certain real estate and policies of insurance to his wife, to hold as her separate estate, free from his control, use and benefit, and the consideration named was the love and affection which he bore her. The deeds contained a clause reserving to himself the power to revoke the grant and assignment, in whole or in part, and to transfer the property to any uses he might appoint, and to such person or persons as he might designate, and to cause such uses to spring or shift as he might declare. At the time of making the deeds he was solvent, but in the general financial panic of 1873 his estate was wasted and he became hopelessly insolvent. Complainant was subsequently appointed assignee of his effects, and in getting together the assets to pay creditors, he sought to have the deeds set aside upon various grounds, the third of which, as expressed in the opinion of the court, was: "That the power of revocation and appointment were assets which passed to the assignee in bankruptcy, and can be executed by him for the benefit of creditors."

The court, through Mr. Justice Field, said: "The questions thus presented, though interesting, are not difficult of solution. . . . The title to the land and policies passed by the deeds; a power only was reserved. That power is not an interest in the property which can be transferred to another or sold on execution or devised by will. The grantor could, indeed, exercise the power either by deed or will, but he could not vest the power in any other person to be thus executed. Nor is the power a chose in action. It did not, therefore, in our judgment, constitute assets of the bankrupt which passed to his assignee."

Dolan's Estate.

This case was soon followed by Brandeis v. Cochrane, 112 U. S. 344 (1844). In that case property was conveyed to a trustee in trust to permit the grantor's wife to receive the rents and profits during her lifetime, and at any time the trustee could convey on the written request of the grantor and his wife to the person designated, and in case of the wife's death in the grantor's lifetime, to convey to the grantor for life with remainder to their children. Later, the grantor became bankrupt, and it was contended that the power of appointment secured to the grantor and wife operated to subject the entire estate, which could be disposed of under that power, to the claims of creditors reduced to judgment. The court held, however, that the estate of the grantor under the trust was merely equitable and of a nature which could not be subjected to sale for the payment of his debts. The opinion proceeds: "It is further said, however, that the bankruptcy itself cut off power of appointment in Forsythe (the grantor). If so, it passed to the assignee in bankruptcy for the benefit of the estate and of the general creditors. . . . But it is held in Jones v. Clifton, 101 U. S. 225, that such a power of appointment does not pass to an assignee in bankruptcy of the person in whom the power resides."

This case reiterates the rule which seems to be well founded in the common law that a power of appointment is not property. It would seem that the power to revoke which Mrs. Dolan reserved to herself in the deed now before the court is very similar to a power of appointment. Viewed from one position, the deed may be considered to be a deed of trust reserving to the grantor a power of appointment to herself or any one else whom she might prefer to the grantees named in the deed, for such is the effect of the power of revocation.

A power of revocation is analogous to a power of appointment, which can be exercised only by the person in whom it resides: Harrington v. Harte, 1 Cox's Chancery Cases, 130; Holmes v. Coghill, 12 Vesey, Jr., 205; Supreme Colony v. Towne, 87 Conn. 644. In the latter case it is said (page 648): "A mere power of appointment is not an asset in the donee of the power and conveys no title to or interest in the property conveyed (Coke Lit., 235 b), and, unexercised by the donee prior to his death, becomes wholly unoperative."

Nor is a trust invalid because of the reservation of a power of revocation: Dickerson's Appeal, 115 Pa. 198; Windolph v. Girard Trust Co., 245 Pa. 349.

As the decedent retained for herself no interest in the trust fund, the thought that the trust was created in contemplation of death is excluded; and cases like Conwell's Estate, 19 Phila. 95, where Judge Ashman sagely observes that "the devices are many and devious by which grantors have sought to retain the revenues of property and at the same time to escape from its burdens by surrendering its possession," and cases cited as inapplicable by the auditing judge from claimant's brief, as well as all cases where the grantor retained a beneficial interest, are not in point.

The cestui que trust was to enjoy the benefit of the trust from its creation, and continues to do so according to its terms, and the mere naked power of revocation, considering the length of time since the creation of the trust, is not sufficient to justify the imputation of a motive to the decedent to evade an act which had not at that time been passed and which has been held not to be retroactive: Dick's Estate, 30 Dist. R. 839. Nor is the reserved power to change the trustee indicative of any such motive. See Houston's Estate, 2 D. & C. 334 (affirmed by the Supreme Court).

For these reasons, and the reasons given by the hearing judge, the exceptions are dismissed and the decree entered by him is confirmed.