In the Matter of the Transfer Tax upon the Estate of ANDREAS M. MILLER, Deceased.

THE STATE TAX COMMISSION, Appellant; UNITED STATES TRUST COMPANY OF NEW YORK, as Executor, et al., Respondents.

**Tax — mere reservation of power to revoke trust deeds does not subject transfers to tax — gift of bonds by father to son who delivered them to trustee under deed providing for payment of income to father for life — delivery not absolute gift — transfer subject to tax upon death of father.**

1. The mere reservation of the power to revoke trust deeds does not subject the property given thereby to a transfer tax upon the death of the grantor. (*Matter of Carnegie*, 203 App. Div. 91; affd., 236 N. Y. 517, followed.)

2. Where, however, a father gave certain bonds to his son, who almost immediately delivered them to a trust company under a deed of trust executed by him whereby the income was to be paid to his father during his lifetime and then to his mother during her's, and upon the death of both the principal to revert to the son, and it appears from the evidence that the father did not intend to part with any present interest in the bonds or with all control over them, the delivery of the bonds to the son was not an absolute gift and the transfer thereof was subject to a transfer tax upon the death of the father.

*Matter of Miller*, 204 App. Div. 418, modified.

(Argued June 4, 1923; decided July 13, 1923.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 26, 1923, which reversed in part a decree of the New York County Surrogate's Court assessing a transfer tax upon the estate of Andreas M. Miller, deceased, and declaring certain trust deeds not taxable.

*Schuyler C. Carlton* and *Lafayette B. Gleason* for appellant. In the so-called deed of Athol M. Miller, the son was merely a conduit, the acting party being Andreas M. Miller, and the form of such trust deed is an attempt to evade taxation. (*Matter of Keeney,* 194 N. Y. 287.) The existence of a possible reversion after the death of the grantor of a trust deed has been held taxable by this court and the possibility of reversion during the grantor's lifetime has been held taxable by the Appellate Division and it is submitted a power to create a reversion in the grantor's lifetime is equivalent to any other possibility of reversion in the grantor's lifetime. (*Matter of Cole,* 235 N. Y. 48; *Clark* v. *Cammann,* 160 N. Y. 315; *Duff* v. *Rodenkirchen,* 119 Misc. Rep. 577; 193 App. Div. 898; *Matter of Bowers,* 231 N. Y. 613; *Masury Case,* 28 App. Div. 580.) The reservation in the deeds of 1914 and 1917 contained was an absolute power of revocation and rendered the property covered by such deeds the property of the grantor to his death. (*Dittmar* v. *Gould,* 60 App. Div. 94; *Schenck* v. *Barnes,* 156 N. Y. 316; *Newton* v. *Jay,* 107 App. Div. 457; *Keeney* v. *Morse,* 71 App. Div. 104; *Williams* v. *Thorne,* 70 N. Y. 270; *Matter of Rosenburg* v. *Rosenburg,* 40 Hun, 90; *Bergman* v. *Lord,* 31 Misc. Rep. 214.)

*M'Cready Sykes* and *George L. Shearer* for United States Trust Company of New York, as executor, respondent. The reservation in a deed of trust of a bare power of revocation, never exercised, does not alone and of itself constitute evidence warranting an adjudication that the

transfer was not intended to take effect in possession or enjoyment until the death of the grantor. (*Matter of Masury*, 152 N. Y. 532; 28 App. Div. 580; *Matter of Bowers*, 195 App. Div. 548; 231 N. Y. 613; *Matter of Carnegie*, 203 App. Div. 91; *Matter of Dana Co.*, 215 N. Y. 461; *Matter of Shute*, N. Y. L. J. June 3, 1922, 835; *Matter of Wing*, 190 N. Y. Supp. 908; *Matter of Dunlap*, 190 N. Y. Supp. 147.) The transfer effected by deed of trust of Athol Morton Miller is not taxable. (*Matter of Miller*, 77 App. Div. 473.)

*Harrison Tweed* for Equitable Trust Company of New York, as trustee, respondent. The statute does not attempt to tax those absolute gifts *inter vivos* made to take effect immediately which are not made in contemplation of death. (*Matter of Vassar*, 127 N. Y. 1; *Matter of Easton*, 113 N. Y. 174.) The courts require clear affirmative proof before they will decide that a gift is one that comes within the statute. (*Matter of Thorne*, 44 App. Div. 8; *Matter of Easton*, 113 N. Y. 174.) Where a gift, made to take effect at once, is absolute and not made in contemplation of death, the purpose with which it is made is immaterial in considering its taxability. (*Bullen v. Wisconsin*, 240 U. S. 625; *Matter of Miller*, 77 App. Div. 473; *Matter of Hendricks*, 163 App. Div. 413; 224 N. Y. 663.)

CRANE, J. Andreas M. Miller died a resident of this state on May 22, 1917. On December 26th, 1914, he made a deed of trust to the United States Trust Company wherein and whereby he gave to it bonds of the value of $336,373.32, to hold and to pay the interest and income thereon, one-half to Helen S. Miller, widow of a deceased son, and the remaining one-half to Atheline Morton Miller, the daughter of said son. After the death of these parties the principal was disposed of in a manner not here important to relate.

No part of the income under this trust deed was to be paid to the donor, Andreas M. Miller. He did, however, reserve the right, at any time, during his life, to revoke the deed of trust and terminate the trust by an instrument in writing under his hand and seal duly acknowledged.

By another trust deed, dated January 9, 1917, Andreas M. Miller created another trust for his daughter, Marion Louise Miller Phillips.

He gave to the United States Trust Company stocks and bonds of the value of $700,000 to hold and to pay the income thereof to his said daughter during her life, and upon her death to distribute the principal among her surviving issue. The donor reserved to himself a power of revocation similar to that in the other trust deed, but made no provision for the payment to himself of any part of the income during his life.

The surrogate was of the opinion that the transfers by these trust deeds were made to take effect in possession and enjoyment at the death of the grantor, and, therefore, subject to the transfer tax as provided by section 220, article X, of the Tax Law (Cons. Laws, ch. 60). With this conclusion the Appellate Division disagreed, holding that the mere reservation of the power to revoke did not render the transfers taxable, citing *Matter of Carnegie* (203 App. Div. 91), since affirmed by this court (236 N. Y. 517). We think in this the Appellate Division was right, and we affirm this part of the order appealed from.

There was, however, another deed of trust or disposition of property by the deceased made through a deed of trust which renders the transfer of this portion of his estate taxable. In this particular we disagree with the Appellate Division.

On March 11th, 1907, Athol Morton Miller, a son of Andreas M. Miller, made a deed of trust to the Van Norden Trust Company of the city of New York, now merged with the Equitable Trust Company. By this

deed of trust the alleged donor gave to the trust company bonds of the value of $408,000 to have and to hold for the following purposes, namely, " to collect and receive the interest, income and profit thereof; and to pay said interest, income and profit as and when received to Andreas M. Miller, father of said first party, during his life, and upon his death to Annie E. Miller, mother of said first party, during her life, if surviving him; and upon their death the principal of said trust fund shall be assigned, transferred and set over to said first party, if he is then living, or if he is not then living, to his issue then living and to the issue of his issue dying before him *per stirpes* and not *per capita*, and if no issue or issue of any of his deceased issue be then living, the second party shall divide the principal of said trust fund among the following corporations, share and share alike:" Then follow the names of four charitable corporations of Minnesota.

The trust agreement contains also the following provision: " Said first party hereby reserves the right to amend this agreement, subject to the approval of such amendment by said second party, or to revoke and terminate this agreement at any time, by an instrument in writing signed and acknowledged by said party of the first part, and said Andreas M. Miller if living, or in case of his death by said Annie E. Miller if living."

Where did the alleged donor and creator of this trust, Athol Morton Miller, get these bonds thus disposed of by this deed of trust? He got them from his father almost at the very time of the execution of the trust deed and the delivery of the bonds to the trust company. It is quite clear from the evidence that the father did not intend to part with any present interest in these bonds or with all control over them. The delivery of the bonds to the son was not an absolute gift divesting the father of all beneficial enjoyment.

Edward S. Avery was the trust officer of the Van

1923.]                    Opinion, per CRANE, J.              [236 N. Y. 290]

Norden Trust Company through whom this transaction was effected. He testified as follows: " Q. Did Mr. Miller or the son inform you whose securities they were that were being placed there? A. Yes, they were very positive about that. Q. What information did they give you? A. The father said that he had given to his son certain securities absolutely without any qualification or condition, that they were his absolutely. And he said that the son would be in the next day to turn over those securities annexed to the certificate of trust. And the son came in and delivered the securities to us, and we received them as the property of the son. Q. What had Mr. Andreas M. Miller previously said to you about the disposition of his property in this way in addition to what you have said? A. Well, he said that he wanted the income to go to him during his life because he thought that was safer: If he gave it to them and they supported him, they might get tired of supporting him. He was a man of considerable humor. And he said, ' I want to have the income while I am alive, but when I am through with it I want it to go to the people for whom it was intended.' Q. Did he mention his wife and his desire to provide for her, anything in that connection? A. Yes, he said very specifically that he was providing for his wife, that he wanted us to get the — that this was a trust practically for her, but he wanted the income reserved for himself while he lived, but that on his death he wanted everything to go to her that he personally did not get."

The purpose and intention of the testator was carried out. He did not give the property absolutely to his son. The bonds received by the son were almost immediately delivered to the trust company under an agreement to pay his father from whom he had received them the income thereof for life. The father had said that he wanted the income to go to him during his life because he thought that was safer. The deed of trust protected

him in this particular. In our judgment the only conclusion to be drawn from this evidence is that the father desired the income on these bonds during his lifetime and at his death the interest or principal to be disposed of as directed by him in the deed of trust. This he accomplished through his son who was a mere intermediary or instrument to effectuate the purpose.

The intention, therefore, of the testator was to give effect to this disposition and the enjoyment of his property at his death. Unless this be so a very easy way would be opened for donors to evade the Tax Law.

For these reasons that part of the order appealed from which exempted from taxation the property transferred under the deed of trust of March 11th, 1907, should be reversed and the matter remitted to the surrogate for appropriate proceedings in accordance with this opinion, with costs in this court and in the Appellate Division.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, McLAUGHLIN and ANDREWS, JJ., concur.

Ordered accordingly.