## FARMERS' LOAN & TRUST CO. v. BOWERS, Collector of Internal Revenue.

Circuit Court of Appeals, Second Circuit. November 12, 1928.

No. 26.

Taylor, Blanc, Capron & Marsh, of New York City (Edward H. Blanc, Henry C. Eld-

ert, Russell L. Bradford, and Joseph Tracht-man, all of New York City, of counsel), for appellant.

Charles H. Tuttle, U. S. Atty., of New York City (Thomas J. Crawford, Frank Chambers, and Samuel C. Coleman, Asst. U. S. Atty., all of New York City, of counsel), for appellee.

Root, Clark, Howland & Ballantine, of New York City (Elihu Root, Jr., Cloyd La-porte, and Herbert Brownell, Jr., all of New York City, of counsel), for Home Trust Co., amici curiæ.

Before MANTON, SWAN, and AUGUS-TUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. On May 25, 1916, three years before his death, William Waldorf Astor, a British subject, made a deed of trust in a very large amount. Plain-tiff in error was named as trustee, and there was transferred to it stocks, bonds, and cash, to be held by it upon the trusts thereby im-posed. On December 26, 1916, and again on August 15, 1919, modifications of the deed of trust were made, to which we shall refer. The plaintiff in error, as executor of the Astor estate, by virtue of an American will dated September 16, 1919, filed an estate tax re-turn, showing a gross estate of the decedent subject to tax imposed by the 1918 act (40 Stat. 1057). This will disposed of holdings in the United States other than the funds referred to in the deed of trust. The tax thereon was paid. In the return reference was made and information given as to the property conveyed by this deed of trust. The Commissioner, on July 11, 1922, ruled that the corpus of this trust fund constituted a part of the decedent's estate, subject to tax under section 402 of the Act of February 24, 1919 (40 Stat. 1097), which provides:

"That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all prop-erty, real or personal, tangible or intangible, wherever situated. * * * (c) To the ex-tent of any interest therein of which the de-cedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or in-tended to take effect in possession or enjoy-ment at or after his death (whether such transfer or trust is made or created before or after the passage of this act), except in case of a bona fide sale for a fair consideration in money or money's worth. * * *

"(e) To the extent of any property pass-ing under a general power of appointment

exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or en-joyment at or after, his death, except in case of a bona fide sale for a fair consideration in money or money's worth."

The tax resulting from this assessment was paid under duress and this action seeks to recover it.

The court below [15 F.(2d) 706; 22 F.(2d) 464] granted judgment for that part of the tax arising from the inclusion, as part of the estate subject to estate tax, of Liberty bonds in the principal amount of $1,331,540.-40; this because these bonds were exempt from an estate tax by reason of the provi-sions of the Victory Liberty Loan Act (31 USCA § 749), and denied further relief.

The deed of trust, as made on May 25, 1916, provided that the funds be invested and reinvested by the trustee, and the income be distributed to one or more of the issue of the settlor and the wife or husband of such issue, and such charities as the settlor should by instrument in writing instruct and direct, and, in default of such direction, to be paid to such charities as the trustee in its absolute discretion might think proper. No income was reserved to the settlor. It provided that at the death of the settlor the principal then in the hands of the trustee should be dis-tributed to and among the issue of the settlor in such shares, or manner provided by the laws of New York, as the settlor might, by will or codicil specifically referring to such power, appoint, and, in default of such appointment, to and among his issue then surviving in equal shares per stirpes and not per capita. As to such of the issue, however, who were in being at the date of the settlement, but who were minors at the time of the settlor's death, it continued to be held in trust during their respective minorities. It further provided that the settlor, but only with the written consent of the trustee, might modify or re-voke the indenture and trust thereby created, either in whole or in part. The plaintiff in error was named and has since acted as trus-tee.

On December 26, 1916, the settlor deliv-ered to the trustee an instrument which modi-fied this deed of trust, so as to provide for the payment out of the trust fund of all taxes, if any were payable, on or by reason of the death of the settlor "upon or in respect of said trust fund," and such English death duties as may be imposed upon his estate. Again on August 15, 1919, the settlor execut-ed and delivered an instrument by which he, with the consent in writing of the trustee, as

required by the indenture of May 25, 1916, modified the trust to the extent only of rearranging the shares in the corpus going to the settlor's issue. It provided that, upon the death of the settlor without exercising the power of appointment reserved to him in the indenture, the trustee should divide the capital of the trust fund then in its hands into two portions of equal value, provided the settlor during his lifetime should have paid to the trustee of a certain English indenture of covenant and settlement, made on the marriage of his son John Jacob with Violet Mary Mercer Nairne, the sum of $4,000,000 agreed to be paid by the settlor to John Jacob Astor, and, if all such sums had not been paid, that then one portion of the corpus should be less than the net value of the other portion by so much of the principal of $4,000,000 as should not have been so paid by the settlor during his life, and should distribute that portion of the capital of the corpus to all or any of the sons of the settlor's eldest son, Waldorf Astor, living at the time of the death of the settlor, and, if more than one, in equal shares; in default of any such son living at that time, then to the persons constituting the issue of the settlor as referred to in the instrument. The other of the two portions of the corpus was to be distributed to John Jacob Astor, unless he should predecease the settlor, and in that event to certain issue of the settlor as provided. The shares of the persons who were infants at the date of the indenture of 1916, and who were under the age of 21 years at the time of the settlor's death, were to be held in trust during minority. At the time of his death, the settlor left two sons and four grandsons, the latter sons of Waldorf Astor. One grandson was born after May 25, 1916. When the settlor died, he left an American, an English, and an Italian will, and in neither did he exercise the limited power of appointment reserved to him by the deed of trust.

■ The question of this appeal is whether the corpus of this trust fund was properly held to be within section 402 of the Taxing Act as a part of the decedent's net estate subject to the estate tax. Had there been no modification on August 15, 1919, after the passage of the taxing act, the cases of Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081, and Frew v. Bowers (C. C. A.) 12 F.(2d) 625, would dispose of the question against the government's claims. But the argument is that the trustee was directed to apply the income during the life of the settlor to and among his next of kin "as the grantor by written appointment shall direct," and while no time was fixed therefor, if there was a default of such appointment, the trustee during the life of the settlor was to apply the income to such charities and in such amounts as the trustee in its absolute discretion deemed proper, and after his death distribution of the trust fund was to be made to the issue of the settlor then surviving, in equal shares, per stirpes and not per capita. Further, that the settlor reserved to himself the right at any time to revoke the trust in whole or in part; also to appoint "such new and other trusts, powers or provisions as said grantor may think fit in favor of or for the benefit of the grantor himself or any one or more of the issue of the said grantor and any husband or wife of any such issue."

Acknowledging that written consent of the trustee was necessary, the argument proceeds that the power of removal of the trustee might be exercised and thus full and complete authority rested with the settlor to make the change without the trustee; that in any case the consent of the trustee was a mere formality which in no wise acted as a limitation on the general power of revocation. It is said that the corpus of the trust fund passed on the donor's death to certain beneficiaries by reason of the supplemental indenture of August 15, 1919. Nichols v. Coolidge, supra, is distinguished on the theory that here there is a reserved power to modify.

By the indenture of May, 1916, the settlor parted with all control over the corpus of the trust, except a conditional power to revoke, and then only with the consent of the trustee. The trustee had obligations with respect to the trust property and the rights of the beneficiaries. Its consent could be granted only with due regard for such duties. Thus the settlor was beyond the power legally to control. In the Nichols v. Coolidge Case, the grantee gave back a terminable lease, with provisions for annual renewal, and by it the grantor could occupy the premises as long as she chose. But the court held that Mrs. Coolidge's rights must be governed by the terms of the lease. In Saltonstall v. Saltonstall, 276 U. S. 260, 48 S. Ct. 225, 72 L. Ed. 565, where the court considered a Massachusetts succession tax, as distinguished from a transfer tax, it said: "A power of appointment reserved by the donor leaves the transfer, as to him, incomplete and subject to tax." Bullen v. Wisconsin, 240 U. S. 625, 36 S. Ct. 473, 60 L. Ed. 830. But nothing in the Saltonstall Case indicates that the transfer would

be incomplete as to the settlor, who reserves a power of revocation conditional on a consent, and beyond his legal power to control. ▮ Here no suggestion is made that there was an intent to evade the tax by depriving the settlor of legal power to control and placing it within the power of a friendly trustee to grant or refuse. A power to revoke is not a property right, nor an interest in property. Jones v. Clifton, 101 U. S. 225, 25 L. Ed. 908; Hill v. Nichols (D. C.) 18 F.(2d) 139; Reinecke v. Northern Trust Co. (C. C. A.) 24 F.(2d) 91; In re Dolan's Estate, 279 Pa. 582, 124 A. 176, 49 A. L. R. 858; Stone v. Hackett, 12 Gray (Mass.) 227. The power of revocation is perfectly consistent with the creation of a valid trust. Title passes to the donee, and remains vested for the purpose of the trust, even though there be a right to revoke it. The power to revoke is not evidence of an intent to postpone the legal enjoyment, existence, or effect of that which may perhaps thereafter be brought to an end, for the reason that the enjoyment and possession actually passes to the beneficiaries. Until the right to revoke is exercised, an estate exists by virtue of the transfer. People v. Northern Trust Co., 289 Ill. 475, 124 N. E. 662, 7 A. L. R. 709; In re Dolan's Estate, supra. Such a power is not transferable or descendable, nor may it be alienated or passed by a will. It is personal to the holder. Lewellyn v. Frick, 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934; Jones v. Clifton, supra; Reinecke v. Northern Trust Co., supra.

When, in May, 1916, the settlor made his indenture, he transferred his title and also all possession and enjoyment. His reserved powers were not conditions of the vesting of the estate, but merely conditional limitations. Such has been the rule under the transfer tax in New York state referring to a transfer intending to take effect in possession and enjoyment at or after death. Matter of Miller, 236 N. Y. 290, 140 N. E. 701; Matter of Carnegie, 203 App. Div. 91, 196 N. Y. S. 502, aff'd 236 N. Y. 517, 142 N. E. 266. But where, in addition to the power to revoke, there is reserved to the grantor the income during life, and the power to pass upon and dictate as to investments and reinvestments, the transfer tax is payable. Matter of Schmidlapp, 236 N. Y. 278, 140 N. E. 697. Moreover, the consent of the trustee to revoke must be honest and in accord with the legal rights of the cestui que trustent. It is always subject to review by a court of equity.

The May, 1916, indenture provided that the remainder, in the absence of the exercise of the limited power of the settlor to appoint by will, was to go to his issue per stirpes and not per capita. The August, 1919, modification provided that the principal, at the time of his death, should remain in trust for such grandchildren as were under age until their majority to the extent of their interest therein, and should then be distributed among them. The modifications made by this instrument did not change the fact that the trust had been created on May 25, 1916, and that the transfer had occurred then, and nothing that he could do thereafter would alter or change that transaction or that trust, unless he revoked in toto the trust instrument and subsequently created a new and different trust. The modification gave to some of the original remaindermen larger proportions than that vested in them on May 25, 1916, and took away from others of the original remaindermen portions vested in them at that time. However, all such changes in the rights of remaindermen were made within the group originally fixed, and no persons outside that group profited thereby.

John Jacob Astor, an original remainderman, continued throughout until the death of the settlor, to be vested with one-third of the corpus of the trust fund. His interest was never reduced. If the settlor had completely revoked the trust, repossessed himself of the property, and made a new settlement, he would have made a transfer or created a trust within the meaning of section 402(c) but by the 1919 modification he changed the interest of his issue; he did not transfer his property. Section 402 (c) refers to the extent of "any interest," and this refers to an interest of the decedent. United States v. Field, 255 U. S. 264, 41 S. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461.

▮ Congress made plain by section 402(e) that the exercise of such a power of appointment was not within section 402(c), for by express provision it refers to a general power of appointment when made by a deed executed in contemplation or intended to take effect in possession or enjoyment at or after death. The power to appoint the remainderman by will to and among the issue of the settlor is a limited power of appointment, and in view of the principle of United States v. Field, supra, is not taxable. It is not an interest in property. Congress imposed a tax specifically by the act of 1918, section 402(e) on the exercise of general powers of appointment. But he did not exercise it, and the property did not pass by the exercise of any power of appointment under any of his wills.

It will be noted that it was by deed, and not by will, that, on August 15, 1919, the settlor, within the direct limitations of the trust instrument of May 25, 1916, exercised in favor of his issue, with the trustee's consent, this limited power. This was but the culmination of the original plan decided upon in May, 1916, to settle his property on his children and grandchildren. His purpose was to give outright the property to the sons of his eldest son and his younger son. An absolute and unconditional power to revoke a trust is treated as equivalent to a general power to appoint. Bullen v. Wisconsin, 240 U. S. 625, 36 S. Ct. 473, 60 L. Ed. 830.

But here there is no such absolute and unconditional power. The trustee's consent was necessary for the settlor's exercise of the power. It therefore required the action of both. The power could not be exercised by the settlor alone, and therefore it was not a general power exercised by the decedent, within the meaning of the statute. Congress intended only to tax the general power, which the settlor might have exercised himself or treated the property as a part of his estate. It is apparent Congress made such a distinction between a general power exercised by a decedent and a limited power requiring more than the act or will of the settlor. In the instant case, if the settlor had appointed himself as beneficiary, it might well be that the trustee could have lawfully refused consent to such a proposal in the interest of the beneficiaries. Therefore we hold that a "general power of appointment exercised by the decedent" refers to a power exercised solely by him, and that section 402(e) of the act does not justify a tax on the power of appointment reserved to this settlor. A general power of appointment contemplates a power of no restrictions as to who may be appointees, and the exercise of that general power referred to in the statute, which is subject to the tax, is the normal power of appointment or one actually expressed, and not something merely analogous to a power of appointment. The statute seems clear enough, and this transaction must come within its terms before the tax can be exacted. Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211.

These views make it unnecessary for us to consider the question of the unconstitutionality of the taxing act as argued, or the other claims for the exemption from taxation of parts of the corpus of the trust. This tax was erroneously exacted, and the plaintiff in error is entitled to a judgment for the amount it paid.

Judgment reversed.