GUARANTY TRUST COMPANY OF NEW YORK AND J. WHITNEY PETERSON, EXECUTORS OF WILL OF JONATHAN PETERSON, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72503. Promulgated April 23, 1937.

*H. H. Shelton, Esq.*, for the petitioners.
*Frank D. Strader, Esq.*, for the respondent.

917

918

920

**OPINION.**

HARRON: The sole question in this proceeding is whether the notes of Jonathan Peterson, deceased, given to his wife as trustee under several trusts were given bona fide and for full consideration in money's worth so as to constitute obligations of his estate which are deductible from the gross estate within the provisions of section 303 (a) (1) of the Revenue Act of 1926, which is quoted in the margin.[1] The facts have been set forth fully and under the circumstances which they describe the question before us must be determined by

---

[1] Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property (except, in the case of a resident decedent, where such property is not situated in the United States), to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth * * *

our conclusions with respect to whether the decedent, hereafter referred to as Peterson, made completed gifts *inter vivos* to his wife, individually or as trustee, of the four sums of money which constituted the corpus of the several trusts and which were transferred back to Peterson in return for his notes, the payment of which petitioners contend is deductible from decedent's estate. If there were no gifts in fact and in law to Mrs. Peterson, individually, or as trustee, of the money put into the trusts and for which the notes were given, then Peterson only "borrowed" his own money and the notes were given without consideration in money's worth.

Counsel for petitioner contends that Peterson made complete legal gifts of money to his wife and that title thereto became vested in her so that Peterson's notes were given for full consideration and represented valid obligations of his estate. Respondent attacks the validity of the gifts and contends that all the transactions constituted a plan preconceived by Peterson whereby he never lost control of the money constituting the alleged gifts. Respondent interprets the various transactions, identical in form, as a tax avoidance scheme whereby Peterson gave his notes to trusts without receiving consideration in money or money's worth from the trusts. Respondent's contention implies that Peterson may have anticipated avoidance of income tax during his life on allowances paid to his wife, children, sisters and cousin and also eventual partial avoidance of estate taxes.

There is no admission in the evidence that Peterson resorted to these transactions to avoid taxation and we are reluctant to interpret the motives of a decedent. Even if an ulterior motive of tax avoidance may be implied from the circumstances, this alone can not determine disallowance of the deductions claimed if the transactions are at law within the exemption from estate tax which is claimed. The decision must turn upon whether the various completed transactions bring the present claim within the scope of the pertinent statutory provision. *Gregory* v. *Helvering*, 69 Fed. (2d) 809, 810; affd., 293 U. S. 465.

The answer to the question whether Peterson made gifts of certain large amounts of money must come from the facts before us. The first transaction in July 1924 established a pattern for the three succeeding transactions and it is therefore discussed fully with consideration of the interpretation of New York decisions on the law of gifts.

Mrs. Peterson testified that she believed her husband had made a gift to her and yet her belief alone can not be determining. *Snavely* v. *Henderson*, 204 Fed. 978. We must examine the acts of the alleged donor to discover whether they were such that we may conclude there was a bona fide gift. If he did not have a clear and unmistak-

able intention to divest himself of the title, dominion, and control of the funds he failed to make such delivery of the subject matter of the gift as is required by law for a gift *in praesenti*. As was stated in *Matter of Bolin*, 136 N. Y. 177; 32 N. E. 626:

> The law never presumes a gift. To constitute a valid gift there must have been the intent to give and a delivery of the thing. The evidence must show that the *donor intended to divest herself of the possession of her property* and it *should be inconsistent with any other intention or purpose.* [Italics supplied.]

The elements necessary to constitute a valid gift are well understood and have been set forth frequently. The law of the State of New York is applicable. In *Beaver* v. *Beaver*, 117 N. Y. 421, 428; 22 N. E. 940, it was stated:

> There must be on the part of the donor an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent, and on the part of the donee, acceptance. * * * But delivery by the donor, either actual or constructive, operating to divest the donor of possession of and dominion over the thing, is a constant and essential factor in every transaction which takes effect as a completed gift. Anything short of this strips it of the quality of completeness which distinguishes an intention to give, which alone amounts to nothing, from the consummated act, which changes the title. The intention to give is often established by the most satisfactory evidence, although the gift fails.

The necessity for a delivery of the thing given with intention to vest in the donee control over it is pointed out in *Jackson* v. *Twenty Third Street Railway Co.*, 88 N. Y. 520, where the question was whether a gift of certain stock had been effected during the decedent's lifetime, as follows:

> Delivery is essential to constitute a valid gift. The delivery must be such as to vest the donee with the control and dominion over the property, and to absolutely divest the donor of his dominion and control, *and the delivery must be made with the intent to vest the title of the property in the donee. The intent is a necessary element of the transaction. Delivery, without intent to vest the title in the donee, could pass no title to him.* Here it may be admitted that the payment of the money by Sharp [decedent], the entry of the stock on the books of the company in the name of Youmans, and the delivery to him of the receipt of July 11, 1872, would have been sufficient to constitute a delivery of the stock to Youmans, and sufficient to make a valid gift thereof, *if such had been the intention of Sharp;* but it is clear that such was not the intention. He did not, in any event, intend to vest the title in Youmans for himself * * *. [Italics supplied.]

The same principle is also set forth in *In re Van Alstyne*, 207 N. Y. 298, 100 N. E. 802, 805, 806:

> There must be a delivery which results in a present change of dominion and ownership. Intention or mere words cannot supply the place of an actual surrender of control and authority over the thing intended to be given. * * * The delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit.

See also *Gannon* v. *Maguire*, 160 N. Y. 476; *Edson* v. *Lucas*, 40 Fed. (2d) 398, 404.

Upon review of the facts it is our opinion that Peterson did not make absolute and unconditional gifts to his wife, individually or as trustee. This is based upon the conclusion that the facts show lack of intention on his part to divest himself at the time of complete control and dominion over the funds and that the deposit of funds in the trusts and the return of them to Peterson in the form of loans was, pursuant to an agreement between Peterson and his wife, that the funds were to be used in only one way, i. e., to set up trusts and be returned to him. The transaction of July 17, 1924, was a pattern for the subsequent transactions, which on three later occasions—two in the same year—were carried out under the same terms and pursuant to like agreement. In each instance, the separate steps were taken at the same time in the course of a few days and as part of one transaction. Comment on the transaction of July 17, 1924, is pertinent to the subsequent ones.

On July 17, 1924, Peterson borrowed $225,000 on his unsecured demand note. The same evening he presented checks to his wife totaling $240,000. Before the conclusion of the evening Mrs. Peterson and her husband discussed setting up trusts for his sisters, whom he looked after, and herself, to whom he gave liberal allowances. It was agreed that she would put the money in trusts temporarily and return it to him at once in the form of loans in return for his notes. It was agreed that he would pay 6 percent on the notes. In the testimony of Mrs. Peterson appears the following:

Question: It was his suggestion that you put the money in trust?
Answer: (Mrs. Peterson) I think it was. I am not sure. It is a long while ago.

Although this complex procedure was carried out four times, Mrs. Peterson's testimony shows a vagueness of the character illustrated above with respect to the significance of the execution of the trust instruments, which were evidently prepared for her signature at the direction of someone other than herself, so as to refute any contention that Mrs. Peterson acted otherwise than under the direction of her husband. The procedure followed by Peterson in making the purported gifts is a long way from being normal. It is unique, for by this plan he purportedly gave $1,048,000 cash to his wife— of which he had only $370,000 in his own cash balances without borrowing. In the first three transactions he allegedly gave his wife $640,000 of which he had only $15,000 in his own cash balance, and later $400,000, none of which he had on hand. It was clearly not Peterson's intention to give up present and complete control over the money used in these transactions. He had borrowed the sums practically in entirety in three transactions and a substantial amount

in the last one and it is evident that he intended to retrieve the sums advanced immediately to pay the loans and for his own uses. He accomplished the happy effect of giving away over a million dollars without making himself poorer by that amount. Such procedure could only be carried out with some other object in mind than making completed gifts. That object is apparent. It was to circulate a stream of cash upon which to float his notes so as "to give the character of interest .payments to money used to pay" allowances he was in the habit of making to relatives and members of his family. (See *Johnson* v. *Commissioner*, 86 Fed. (2d) 710, which discusses a transaction similar to the ones involved here.)

The first trusts were executed by Mrs. Peterson before depositing her husband's checks pursuant to the agreement between herself and her husband as to the use of the money. It is noted that a check can not constitute a gift until it is paid. (*Curry* v. *Powers*, 70 N. Y. 212; *Matter of Smither*, 30 Hun. 632; *In re Gibbon's Will*, 254 N. Y. S. 566). Mrs. Peterson entered upon execution of the steps agreed to before there was a momentary opportunity of independent action and throughout we are unable to find that she had any real scope of independent control over the purported gifts. It is our opinion that in all the transactions Mrs. Peterson acted under the direction and control of her husband under agreement to return the funds to him in the form of loans and that he did not for an instant lose control of his "gift." Under such circumstances, we are constrained to hold that Peterson did not make valid gifts to his wife individually or as trustee. See *In re Halligan's Estate*, 143 N. Y. S. 676; *In re Von Benuth's Estate*, 143 N. Y. S. 672; *Schwab* v. *Schwab*, 163 N. Y. S. 246; *Schneider* v. *Schneider*, 107 N. Y. S. 792—all relating to attempted gifts of bank deposits—*In re Miller's Estate*, 236 N. Y. S. 290; 140 N. E. 701, 702.

Having concluded that Peterson did not convey title (by way of gifts) to the money used in these transactions, it follows that he supplied his own money to the trusts and the practical and legal effect of what was done was to set up trusts composed solely of his notes given without consideration. We believe Peterson could have set up defense against payment of these notes of lack of consideration. Believing that there would be no legal obligation to pay the notes, the fact that he assigned stock as collateral becomes immaterial, for any equitable claim to the stock could be defeated by the failure of the claim they allegedly secured. See Bogert on Trusts and Trustees, vol. I, p. 358, ¶ 114; American Law Institute, Restatement of Trusts, § 26; *Id.*, Restatement of Contracts, vol. 1, p. 81, ¶ 75 (b); *Dougherty* v. *Salt*, 227 N. Y. 200; 125 N. E. 94; *Holmes* v. *Roper*, 141 N. Y. 64, 66. The notes were only promises to make gifts in the future.

It is noted in the findings of fact that a gift tax was paid on the first transfer of funds to Mrs. Peterson. This tax was not in effect when the subsequent transfers of funds were made. The payment of the gift tax may or may not be indicative of the intent to make a gift. It is of little weight if bona fides are lacking and it is not determinative of the question whether delivery of the gift is such as to divest the donor of dominion and control over the thing given. Consequently, this fact, in the presence of the general circumstances involved, is not material.

The facts in this proceeding are similar to those in the case of *Johnson* v. *Commissioner, supra.* In the transactions described in the report of that case Johnson borrowed $400,000; presented a check to his wife for that amount, whereupon she executed a trust and deposited the check therein pursuant to an agreement with her husband. The trust instrument required the trustee to loan Johnson (naming him) all or part of the trust fund for his 6 percent demand notes. The trustee "loaned" him all the trust funds and he paid the bank loan he had obtained. The trust instrument required the trustee to apply the funds to pay premiums on Johnson's insurance policies. The Circuit Court held that there was no gift and that "the practical and legal effect of what was done was to set up a trust composed solely of Johnson's note given without consideration" in "an ingenious attempt to reduce taxes by means of a plan which was intended to give the character of interest payments to money used to pay insurance premiums on policies upon the life of the petitioner."

It is noted that in the *Johnson* case the trustee was required by the trust instrument to loan all the funds in the trust to Johnson. This fact was held indicative of lack of donative intent in the *Johnson* case. In this proceeding the facts show an agreement prior to the execution of the trusts to "loan" the money involved to Peterson at the agreed rate of 6 percent interest. The terms of the Peterson trusts that the trustee could loan the trust funds to anyone may be considered in the light of the settlor's intent and all surrounding circumstances and the prior agreement between Mrs. Peterson and her husband is as strong evidence of lack of donative intent in these transactions as were the express terms of the Johnson trusts. (See A. L. I., Restatement of the Law of Trusts, sec. 164, pp. 403, 404.) It was as certain that she, as trustee, would loan the funds to Peterson as though the trust instrument had expressly limited the trustee to loan trust funds to Peterson only. In addition, the conclusion reached that no gift was completed results in the finding that the trustee in this proceeding had no money with title in herself to "loan" and the terms in the trust instrument which petitioner contends would distinguish this proceeding from the *Johnson* case

have no operative significance. We believe this proceeding is not distinguishable from the *Johnson* case.

The courts and this Board have looked through the forms of transactions to their substance, particularly where an effort to reduce or avoid the payment of taxes is the evident real purpose of the transactions. Such intent was admitted in the *Johnson* case. We are convinced that such purpose was also present in the mind of decedent here, who held himself out to be a "donor" in transactions which were unreal in view of the means at his command to make a bona fide valid gift at the time without resorting to such complex procedure of creating forms without substance in fact or in law. The courts have been as diligent in requiring compliance with the technical requirements of the law of gifts and sales to bring transactions within the exemptions of the revenue acts as individuals have been in straining to apply the technical forms of law to bring about that result, and in the following decisions the separate transactions in a preconceived plan were not regarded as having effected gifts or sales of property: *Commissioner* v. *Dyer*, 74 Fed. (2d) 685; *S. A. Macqueen Co.* v. *Commissioner*, 67 Fed. (2d) 857; *Shoenberg* v. *Commissioner*, 77 Fed. (2d) 446. In *Jackson* v. *Commissioner*, 64 Fed. (2d) 359, and the following decisions it was held that attempted gifts and sales were not consummated: *J. L. McInerney*, 29 B. T. A. 1; affd., *McInerney* v. *Commissioner*, 82 Fed. (2d) 665, where it was held that there was no bona fide gift. It is noted that all arrangements had been completed in advance and that the transfer of property to a wife was an incident in a plan. *Adolph Weil*, 31 B. T. A. 899; affd., 82 Fed. (2d) 561; certiorari denied, 299 U. S. 552; *Theodore C. Jackson et al., Administrators*, 32 B. T. A. 470; *Joseph Blumenthal*, 30 B. T. A. 125; *D. A. Belden*, 30 B. T. A. 601; *F. Coit Johnson*, 33 B. T. A. 1003; affd., *Johnson* v. *Commissioner, supra.*

Petitioners rely on *D. B. Malernee*, 31 B. T. A. 662, but that case is distinguishable on the facts. It was held there that a valid gift had been made. The circumstances showed that the donor relinquished control over the subject matter of the gift and that he did not have any preliminary understanding with his wife as to what disposition she would make of the gift.

Under the facts it is held that Peterson's notes to the several trusts were not given for full consideration in money or money's worth and the claims based on these notes are not deductible from his gross estate under section 303 (a) (1) of the Revenue Act of 1926. Respondent did not err in disallowing the deduction claimed.

Reviewed by the Board.

*Decision will be entered for the respondent.*

MURDOCK, dissenting: This is a case where differences of opinion may be expected. However, I think too many inferences or suspicions have been used to overcome the petitioners' uncontradicted evidence.

SMITH, VAN FOSSAN, and LEECH agree with this dissent.

---

LEECH, dissenting: The necessary premise of the majority opinion is that Jonathan Peterson retained a *right* to the purported gifts after they were made. Supplementing the statement of Member Murdock, with which I agree, the only direct evidence in the record on that point is the statement of the donee. She denies the existence of that retained right—not vaguely but categorically. Her testimony is neither contradicted nor discredited. The fact that the money for the gifts was borrowed does not seem to me to do so. Not only that, but, contrary to the situation existing in the case of *F. Coit Johnson*, 33 B. T. A. 1003; affd., 86 Fed. (2d) 710, upon the authority of which the majority opinion is largely supported, and contrary to the view expressed in the prevailing opinion here, the purposes of the present trusts were not for the benefit of Jonathan Peterson, except in so far as they relieved him of his legal obligations. Obviously, such obligations did not include the support of his sisters nor his competent children then of age, the provisions for which third parties were not even limited, by the trust, to Peterson's life. Likewise, differentiating the facts in this case from those in the *Johnson* case, the trusts here did not limit the trust in its use of the funds to a loan to Peterson.

At most, it seems to me this record discloses that Jonathan Peterson gave his wife these gifts, unconditionally, relying on the return of them to him as loans, not upon any agreement of his wife, but wholly upon her doing so in the exercise of her absolute discretion. Such reliance does not establish the essential retained *right* of Peterson to the gifts when made, which, alone, defeats them as completed gifts. As stated another way by the Second Circuit Court of Appeals in the *Johnson* case, *supra:*

* * * The distinction, though often hard to detect in fact, is perfectly clear in principle between creating rights which you trust will not be exercised and creating no legal right at all; a transaction of the first kind changes existing legal relations between the parties, the other does not. * * *

SMITH, ARUNDELL, and TYSON agree with the above dissent.