LULU TIRRILL COOMBS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62490.   Promulgated March 8, 1934.

*David A. Buckley, Esq.,* and *L. P. Mattingly, Esq.,* for the petitioner.

*E. A. Tonjes, Esq.,* for the respondent.

### OPINION.

McMAHON: The petitioner on her income tax return for the year 1929 deducted from gross income the amount of $82,089.73 as representing a loss alleged to have been sustained upon the sale at public auction of 1,572 shares of stock of the Fajardo Sugar Co. and 45 shares of stock of the National City Bank of New York, which deduction was disallowed by the respondent. There is no controversy as to the cost of the stock. The only question before us is whether the transaction on or about December 26, 1929, herein involved constitutes an actual sale.

The only witness in behalf of the petitioner was John Bass, a member of the partnership for approximately ten years last past. He testified that he took no part in the negotiations conducted by the partnership for the purchase of this stock; that he was not present at the auction sale at which the partnership made a bid for the stock; that, although he was positive some representative of the partnership was present at the auction sale, he could not recall who was present; that he did not know "the physical handling of the transaction", but that he did know that the auctioneer "turned over the stock in exchange for the check"; that the partnership was interested in acquiring any stock in the Fajardo Sugar Co. offered for sale because they had learned that several large stockholders of that company were getting ready to "proxify" at the next annual meeting of its stockholders for the purpose of obtaining the control of the company's voting stock.

In the case of *Luella Hoyt Slayton*, 29 B.T.A. 931, the Board stated:

\* \* \* While a sale for tax purposes is not to be disregarded because of its motive, on the other hand, a mere gesture without the *vital intent to change ownership* is not to be recognized as a sale merely because superficially it resembles one. \* \* \* [Emphasis ours.]

James B. Coombs had but a third interest in the partnership and the remaining interest therein was divided among five other members. However, his financial interest does not measure the extent of his influence or control over the other members or the affairs of the partnership. Furthermore, although the partnership paid to the auctioneer the purported purchase price, which apparently was turned over to the petitioner, less the auctioneer's commission, such purported purchase price less commission received by the petitioner was returned to and deposited with the partnership. Thus the purported consideration for the stock found its way back into the possession and control of the partnership. The witness testified that he did not know whether the petitioner made any substantial withdrawals thereafter and, there being no evidence to the contrary, it may be inferred that the partnership had the use of this money until the stock was returned to the petitioner on March 7, 1930. There is no showing in what manner the payment of the consideration for the purported resale to the petitioner on March 7, 1930, was handled. Her deposit account with the partnership was not produced and it is just as reasonable to assume that the transaction required merely a bookkeeping entry, there being sufficient moneys on deposit and in the possession of the partnership to cover the amount.

The reason advanced for the purported purchase by the partnership of the Fajardo Sugar Co. stock is not very convincing. The witness testified that, having learned toward the end of 1929 that " several large stockholders in the Fajardo Sugar Company " were trying to secure proxies, apparently in an effort to divest the partnership of voting control, the partnership was " not interested in letting any such stocks that may be offered for sale go into other peoples' hands." Upon cross-examination, he testified that the partnership made a practice of buying and selling this stock and that he did not know exactly whether or not the partnership bought considerable stock at that time—

but they [the partnership] usually buy and sell Fajardo stock *in view of the fact that we* [the partnership] *own most of the stock*, and we have a particular interest in this particular security. The people naturally come to us first in order to find out whether we would like to buy or sell, because at times we can give them better quotations. [Emphasis supplied.]

This apparent inconsistency upon the subject of the ownership of the stock is not explained in the record. Furthermore, it seems rather strange that, at a time when the partnership was concerned about maintaining its voting control of the Fajardo Sugar Co., the petitioner should offer her stock for sale through a securities auctioneer, assuming, of course, that she knew, as she undoubtedly did, that her

husband had a third interest in the partnership and that the account of the Fajardo Sugar Co. was its largest account at that time.

The witness testified that when the partnership check was issued to the auctioneer the cash account on the partnership's books of account was credited showing cash paid out, and that he did "not know what asset account was charged but it was charged on the books." Therefore we do not know how this transaction was treated on the books of the partnership.

Furthermore, the evidence is meager and not at all enlightening as to the attitude or actions of the petitioner in this transaction. The witness testified that "we knew that the stock was put up for sale because it was advertised, probably by Mr. Coombs; he knew about it." We must assume that she endorsed the stock certificate in order to have it canceled and transferred to the partnership and that she endorsed the check received from the auctioneer in order to turn it over to the partnership, but even as to this the record is barren. Although the witness was a member of the partnership and the partnership apparently controlled the Fajardo Sugar Co., and although the witness became, some time after the transaction herein involved, vice president of the company, he testified that he was not familiar with the records of the corporation showing the stock transfer as he was not an officer of the corporation at that time. The stock records of the company were not introduced in evidence.

We are not convinced that the transaction on or about December 26, 1929, was actuated on the part of the petitioner by the intent or purpose of absolutely getting rid of the stock and on the part of the partnership of absolutely acquiring it as its own *without any condition covering its later return to the petitioner. Harold B. Clark*, 2 B.T.A. 555. In that case the Board stated:

\* \* \* The payment of a price and the delivery of certificates do not constitute the sole requisite of a valid sale. The parties must make a bona fide transfer as persons dealing at arm's length would do—the seller for the purpose of *absolutely* getting rid of the stock and the buyer for the purpose of *absolutely* acquiring it as his own without any condition covering its later return to the seller. Receiving a credit for the price and the mere indicia of ownership without the mutual element of *intent* on both sides to complete an absolute sale, can not constitute a basis for a deduction for loss under the provisions of the tax law. A loss to be deductible must be a *reality*. [Emphasis supplied.]

The action of the respondent must therefore be approved.

Reviewed by the Board.

*Decision will be entered for the respondent.*