JOSEPH BLUMENTHAL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68473.   Promulgated March 20, 1934.

*Theodore B. Benson, Esq.*, for the petitioner.
*P. A. Bayer, Esq.*, for the respondent.

OPINION.

McMahon: The question to be determined is whether the petitioner is entitled to a deduction from gross income for the year 1930 of the amount of $31,174.25, which petitioner claims represents a loss resulting from a sale of 1,075 shares of Reynolds Metals Co.

stock in 1930 on the New York Stock Exchange through Montgomery, Scott & Co., brokers, in the regular course of business. The respondent, however, contends that the transaction did not constitute a sale, as the petitioner was the principal in the selling order and also the principal in the buying order, and, further, that if the transaction was a sale in form, it was not an actual sale.

The petitioner testified that he decided to dispose of the Reynolds Metals stock at the very end of 1930, solely because he wanted to show an income tax loss. In *Mrs. Niels (Mellie) Esperson, Executrix*, 13 B.T.A. 596, the Board stated:

\* \* \* Since the transaction was made for the avowed purpose of reducing taxation and apparently would not have been consummated otherwise at this time, *every requirement of a sale* must be met. \* \* \* [Emphasis supplied.]

In *Harold B. Clark*, 2 B.T.A. 555, the Board stated:

\* \* \* The parties must make a *bona fide* transfer *as persons dealing at arm's length would do*—the seller for the purpose of *absolutely getting rid of the stock* and the buyer for the purpose of absolutely acquiring it as his own without any condition covering its later return to the seller. Receiving a credit for the price and the mere indicia of ownership, without the mutual element of intent on both sides to complete an absolute sale, cannot constitute a basis for a deduction for loss under the provisions of the tax law. A loss to be deductible must be a reality. [Emphasis supplied.]

The petitioner contends that he sold the stock in the regular course of business through a member of the New York Stock Exchange on December 26, 1930, and that his wife purchased the stock on the same date with funds presented to her by him as a gift, or, in other words, that there were two transactions.

The petitioner testified that when he gave the order to sell the 1,075 shares of Reynolds Metals stock he also gave an order to buy the same number of shares in the name of his wife; that his wife did not tell him to purchase the stock, although she knew of it; that his wife had no property or money except such as he had given to her from time to time; that he told his wife that he was going to make her a present of $12,387.51, with which to purchase 1,075 shares of Reynolds Metals stock; and that he wanted his wife to own the stock as he did not want it to pass out of the family. However, the petitioner did not deliver his check in the amount of $12,387.51 to his wife. He delivered it to the bank in which he kept his funds, whereas his wife had a separate account at another bank, and he personally instructed the bank as to its disposition. His wife did not see the check, did not endorse it, and at no time, so far as we know, did she exercise any rights of ownership with respect to the funds deposited in her name by the petitioner with the Tradesmens National Bank.

The petitioner delivered the certificates issued in his name to the Tradesmens National Bank enclosed in his letter of December 26, 1930. The bank on December 29, 1930, delivered these certificates to Montgomery, Scott & Co., and on January 5, 1931, this company returned the same certificates to the bank. On the same date the bank sent these certificates to the Bankers Trust Co. of New York to be transferred to Mrs. Blumenthal. A clerk of the bank testified that before these certificates were sent to the Bankers Trust Co. he filled in the name of Mrs. Blumenthal in the endorsement on the back of each certificate as assignee, pursuant to instructions; that the bank's records contain a receipt for these certificates signed by the Bankers Trust Co. and dated January 6, 1931, and that these records show that on January 7 the Bankers Trust Co. sent to the Tradesmens National Bank a letter accompanied by the new certificates issued to Mrs. Blumenthal; and that on January 8 the Tradesmens National Bank sent these certificates to the petitioner.

While it is asserted by the petitioner that the sale was made on the New York Stock Exchange on December 26, 1930, through Montgomery, Scott & Co., it appears from the foregoing that the first entry of the transaction in the account of the petitioner, and also in the account of his wife with such broker is dated December 29, 1930, the date the original certificates were delivered to the broker by the Tradesmens National Bank, which certificates were returned to the bank on January 5, 1931.

From the whole record we are convinced that the foregoing constituted but one transaction and that there was no real or actual sale, the " vital intent to change ownership " being wholly absent. *Luella Hoyt Slayton*, 29 B.T.A. 931.

In a somewhat analogous situation, the Board, in *Mrs. Niels (Mellie) Esperson, Executrix, supra*, stated:

* * * A man can not make a sale to himself. And yet the evidence in this case would indicate that this transaction, which we are asked to accept as a sale, amounted to little, if anything, more than this. We have already eliminated Peters and Brown [the alleged purchasers] from the transaction as independent actors. Whatever, therefore, was done by them or in their names must be taken as if done by or on behalf of Esperson. * * *

In this proceeding it is very apparent that whatever was done was done upon instructions of the petitioner. While the petitioner testified that his wife knew about the transaction because he told her about it, there is no evidence of any independent act on her part in the whole transaction. It is true that the bank clerk testified that the records of the Tradesmens National Bank contain a letter dated January 9, 1931, from Mrs. Ray S. Blumenthal acknowledging receipt of the certificates issued in her name, but there is no evidence that this letter was signed by her or anyone else. There is no evidence

that the certificates were actually delivered to her. These certificates were mailed to the petitioner, were in his possession at the hearing, and, so far as we know, were never out of his possession. In our opinion, at the very outset of this transaction, the petitioner gave the order to sell the stock with the understanding that it or at least an equivalent number of shares would be returned to him issued in the name of his wife.

In *Esperson* v. *Commissioner*, 49 Fed. (2d) 259; certiorari denied, 284 U.S. 658, the Circuit Court, in affirming the decision of the Board in *Mrs. Niels (Mellie) Esperson, Executrix, supra*, stated:

* * * It may be assumed that an owner of stock would sustain a deductible loss by selling it and later buying back an equal amount, but *no real sale is made where by one and the same transaction the same number of shares are both bought and sold at the same time and at the same price.* [Emphasis supplied.]

The petitioner testified that he bought the stock because he thought the Reynolds Metals Co. was a good concern because he had confidence in R. S. Reynolds, the head of the company; that he thought its business was a good business and that the stock would pay; that R. S. Reynolds was president of the Eskimo Pie Corporation, a good customer of Blumenthal Bros.; and that his brothers bought some of the Reynolds Metals stock upon his recommendation and still own it. During the year of 1930 the petitioner received dividends from the Reynolds Metals Co. in the total amount of $2,365. There being nothing to the contrary, this evidence rather supports our view that the petitioner never intended to absolutely get rid of the stock or to lose control thereof.

In support of his contention that his wife purchased the 1,075 shares of Reynolds Metals stock, the petitioner contends that he made her a gift of the money with which to purchase the same. However, the check was never delivered to the wife; and while it was deposited in the bank in her name, as far as we know, the petitioner retained control of the account. As appears from the testimony of the petitioner, the purported gift was to be used for the purpose of acquiring 1,075 shares of Reynolds Metals stock. The record discloses that the petitioner saw to it that such funds were used for that purpose. Thereafter the certificates transferred to the wife were delivered to the petitioner at his offce. The petitioner testified that his wife at no time agreed or promised to transfer the stock back to him; that he has not received any dividends from the stock; that the certificates have not been endorsed by his wife; and that the stock has never been used as collateral for a loan by either himself or his wife. In our opinion the latter testimony of the petitioner at most indicates an intention on the part of the petitioner to make a gift of the stock

to his wife. In that view the entire transaction amounted to a sale and purchase in form by the petitioner to make a gift of the stock to his wife. Such a transaction does not result in a deductible loss under the revenue laws, which answers the only question here presented in this respect.

The action of the respondent in disallowing the deduction of $31,174.25 is approved.

Since we approve the action of the respondent, it is not necessary to consider the alternative allegations contained in respondent's answer based upon disapproval of his determination.

Pursuant to stipulation, the amount of the contributions allowed by the respondent in computing the tax liability of petitioner for the year 1930 should be decreased in the amount of $128 and the deficiency recomputed accordingly.

The respondent contended further that the return filed by the petitioner was the joint return of petitioner and his wife and that the petitioner and wife, after electing to file a single joint return, became a single interest and represented but one taxpayer within the meaning of section 118 of the Revenue Act of 1928, and that therefore the sale of securities from a husband to a wife must be treated as though made by one individual. Since we have determined that there was no real or actual sale, it is not necessary to consider this contention, or petitioner's second assignment of error based upon such contention.

Reviewed by the Board.

*Decision will be entered under Rule 50.*