404

W. E. Brochon, Petitioner, *v*. Commissioner of Internal Revenue, Respondent.

Docket No. 61455.    Promulgated April 17, 1934.

*L. A. Luce, Esq.*, for the petitioner.
*Isadore Graff, Esq.*, for the respondent.

## OPINION.

McMahon: The respondent contends that where husband and wife file a joint income tax return they thereby constitute a single taxpayer; that purchases and sales of securities by husband and wife are to be treated as though made by one individual; and that therefore under the provisions of section 118 of the Revenue Act of 1928

a loss from the sale of securities by the husband may not be deducted if within 30 days after such sale the wife acquired substantially identical property, citing I.T. 1997, C.B. III–1, p. 149. As conceded on brief by the respondent, the Board has held to the contrary in *Frank B. Gummey*, 26 B.T.A. 894. To the same effect is *Joseph E. Uihlein*, 30 B.T.A. 399. Upon authority of these cases we are unable to agree with the above contention of the respondent.

The respondent further contends that the alleged purchase of the 300 shares of Chicago Corporation stock at the end of December 1929 was actually made by the petitioner and that, therefore, the sale of the same number of shares of the same stock by the petitioner was not a bona fide sale.

The petitioner contends that he actually sold the stock as disclosed by the statements of the brokerage firm and the confirmation of sale; that the sale by the broker was an arm's length transaction upon which he paid both commission and taxes, his account being credited with the amount of $3,894, the net proceeds of such sale; that the statement of the account of Pearl Brochon, his wife, shows that she purchased the stock for $3,975.77, and thus paid on the open market $38.27 more than the petitioner received " gross " in parting with his stock; that she paid considerably more than he received net, after the broker had deducted commission and taxes; that petitioner's wife held the stock for almost a year, until November 1930, before she parted with the same at a loss; and that the respondent offered no testimony whatever to contradict either the clear evidence of the statements of the brokerage firm or the testimony of the petitioner.

The petitioner testified that he was prompted in making this transaction in part by a desire to establish a tax loss and in part by the fact that there was a substantial drop in the market and that he did not like the way the stock was acting; that when he decided to dispose of the 300 shares of Chicago Corporation stock he discussed the matter with his wife; that his wife questioned his judgment in selling the stock, as she thought the stock would go up; that she wanted to buy the stock; that he placed the order to buy the stock for his wife with Morrison & Townsend by telephone; that his wife had no funds of her own; that for that reason some one had to guarantee her account with the broker and he decided that he would rather guarantee it than ask her father or her aunt to do it; that the stock was sold in November 1930 at a loss and such loss was charged to his account because he had guaranteed the account of his wife; and that this was the only stock transaction in which his wife was ever involved as far as he knew.

In substance, so far as the purported purchase of stock on margin by the wife is concerned, it was no more than a paper transaction

appearing only on the records of the broker. She had no funds and no credit to pledge. She assumed no financial responsibility. Cf. *Benjamin T. Burton*, 28 B.T.A. 1242. While the stock was charged to her account, when the stock was sold in 1930 the loss reflected in her account was closed into petitioner's account. Apparently the petitioner was deemed primarily liable to the broker.

The statement of Morrison & Townsend of the account of the petitioner discloses that the 300 shares were sold at 13⅛, or a total of $3,937.50. From this item the amount of $37.50 representing commission and the amount of $6 representing Federal and state tax were deducted, leaving a net credit to petitioner's account of $3,894. The statement of Morrison & Townsend of the account of petitioner's wife discloses that the 300 shares were purchased at the same price of 13⅛. However, there is an apparent error in the extension of the total, which is $3,975, or $37.50 more than $3,937.50, which is the correct amount. Since the statement of the petitioner shows that he was charged a commission of $37.50 on the sale of 300 shares of stock at 13⅛, it may reasonably be assumed that this item of $37.50 included in the extension on his wife's statement also represents broker's commission. Assuming this to be true, the only difference in the two transactions as shown by such statements is that the petitioner was charged with a tax of $6, whereas the account of petitioner's wife was charged with an item of 77 cents designated on her statement as the "Int & Com". The purported sale price and purchase price were the same, i.e., 13⅛.

The case of *Cole* v. *Helburn*, 4 Fed. Supp. 230, cited by the petitioner, is distinguishable from the instant proceeding. In that case the defendant, a collector of internal revenue, made no contention that the sale of stock by the taxpayer was not a bona fide sale, and conceded that the stock was actually sold by the plaintiff and that the same stock was actually bought by plaintiff's son. However, the collector contended that the transaction was within section 118 of the Revenue Act of 1928. The court held that, since the defendant had conceded that the father had actually sold the stock and that the son had actually bought the same, and since the father did not acquire title to his son's stock until long after the expiration of 30 days following the sale of his own stock, section 118 had no application and plaintiff was entitled in his 1929 income tax return to deduct the loss sustained by him in the sale of his radio stock.

Under all the circumstances we are of the opinion that the transactions herein did not constitute an actual sale of the stock by the petitioner, but one in form merely, and that therefore the claimed loss is not deductible. *Mrs. Niels (Mellie) Esperson, Executrix*, 13 B.T.A. 596; affd., *Esperson* v. *Commissioner*, 49 Fed. (2d) 259;

certiorari denied, 284 U.S. 658. See *Lulu Tirrill Coombs*, 30 B.T.A. 35; and *Joseph Blumenthal*, 30 B.T.A. 125. Cf. *Joseph E. Uihlein, supra.*

However, even if the sale by the petitioner were assumed to be an actual sale, we could not regard the purported purchase by the wife as other than a purchase by the petitioner, since she had no funds or credit of her own and he at the outset ordered the same number of shares bought in her name and assumed financial liability therefor and later, in 1930, the loss reflected in the account of his wife was charged to his account. Consequently, under such an assumption and all the other facts and circumstances, the petitioner having purchased within 30 days after the sale by himself the same number of shares of the same stock sold by him, no deduction on such sale by him could be allowed under section 118, Revenue Act of 1928.

Reviewed by the Board.

*Decision will be entered for the respondent.*