GRACE A. COWAN, EXECUTRIX, ESTATE OF GLEN P. COWAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67228. Promulgated April 3, 1934.

*H. A. Mihills, C.P.A.*, for the petitioner.
*James K. Polk, Jr., Esq.*, and *H. B. Hunt, Esq.*, for the respondent.

## OPINION.

MARQUETTE: On December 23, 1929, the decedent disposed of one block of stock to an old friend and business associate and on the 30th day of the same month he made a disposition of other stock to his brother-in-law, and each of them paid him the same amount, one dollar. It is conceded that each transaction was consummated for the sole purpose of producing a deductible loss, and in this way the reduction of decedent's income tax. In such case the transactions should be closely scrutinized (*Harold F. Seymour*, 27 B.T.A. 403), and clear proof is required that the transactions were bona fide and not a subterfuge, and that fair value was paid. *Commissioner* v. *Hale*, 67 Fed. (2d) 561. If a taxpayer meets these requirements, he succeeds in his purpose (*Bullen* v. *Wisconsin*, 240 U.S. 625); otherwise, he does not.

The first transaction was a transfer to Stephens of class A stock and class B stock of the Byers Machine Co. Prior to December 1929 Stephens had no interest in that company. Before he came to the office of the decedent, the latter and Bender had determined to endeavor to sell the stock to him. The scene is thus described by Stephens:

Q Under what circumstances was that purchase made? You just relate what occurred.

A Well, I think one day I was talking to Mr. Bender and Mr. Cowan came in and says, I want to take—he said to me, " I want you to take some of my Byers stock over." So in another week or so Mr. Bender had the dope ready and I took it.

Q Did Mr. Cowan make any actual offer to sell stock to you?

A Well, he said he had a certain amount he would have to get some way off of his books, as I understood it, and he offered it to me for one dollar.

* * * * * * *

Q Was that the only discussion which you had with Mr. Cowan as to the supposed sale of the Byers Machine Company stock to you?

A I think so. I don't think there was much talk about it. I just know I had heard from time to time that it wasn't going so good; I wasn't so hot about it.

Q You mean the Byers Machine Company?

A Yes.

Q Mr. Stephens, did Mr. Cowan make any explanation to you at the time in connection with his proposed sale of the Byers stock for one dollar?

A You mean——

Q My question is as to whether or not there was any further discussion, any comment made by Mr. Cowan in regard to the supposed sale?

A No, I don't know as there was, only just to get it off his books.

Q Did he make an actual sale to you?

A Oh, yes.

Q What consideration was paid by you, and in what form?

A I gave the one dollar bill to Mr. Bender.

Stephens further testified that, while the decedent did not so tell him, he understood that the sale was made for tax purposes. It thus appears that Stephens did not desire the stock for any purpose and we can not assume that he would have paid a price commensurate with the value of the stock as disclosed by the record. He took over the stock solely as an accommodation to his old friend and business associate. Both the decedent and Stephens were men of means, and the consideration of a dime or a cent would have been just as onerous to the one as beneficial to the other. In our opinion the passing of the dollar bill gave no additional virtue to the transaction. The delivery of the dollar was a mere formality. Especially is this true when we consider the value of class A stock.

On this point the petitioner introduced evidence in an effort to show that it was worthless. If so, the loss had been suffered prior to the transaction with Stephens. But this thought does not seem at that time to have occurred to the decedent or to any other stockholder, and the evidence fails to disclose any identifiable event which would indicate that the stock was worthless. On the other hand, the balance sheet of the corporation and the quotations of the Cleveland Stock Exchange clearly indicate a value far in excess of one dollar. It may be the market might not have been able to sustain the weight of a sale of all the decedent's stock made at one time, but such a sale was not necessary. If decedent desired bona fide sales they could have been made over a period of time and in small blocks. Perhaps, though the point is by no means clear, some of the sales made in December were supported by procured purchasers. The fact remains that in 1930 this stock was sold as high as $7 per share.

We are convinced that one dollar was by no means commensurate with the value of the class A stock purported to have been sold. If a consideration of one dollar in a transaction between individuals of means, who are old friends and business associates, can convert into a sale what in fact was a gift, then any lesser consideration would have the same effect. We can not assent to such a proposition, especially where the sole purpose of the transaction was to avoid income tax. Although there is testimony that Stephens was under no obligation to return the stock, he states that in the early part of 1932 he sold the stock for one dollar to Bender, who appears at that time to have been in the employ of the decedent's estate,

and at no time did Stephens attempt to ascertain what value the stock possessed. While Stephens testified that Bender had expressed a desire to become a director of the corporation, it is pertinent to point out that when Bender testified he made no reference to this later transaction, nor was he called upon to testify concerning it. We think the respondent properly denied the claimed loss. *Wishon-Watson Co.*, 25 B.T.A. 321; affd., 66 Fed. (2d) 52; *Commissioner v. Hale, supra; Ten-Eyck v. Whitbeck*, 135 N.Y. 40; 31 N.E. 994; *In re Lynch's Estate*, 220 Pa. 14; 69 Atl. 290; *Salmon v. Wilson*, 41 Cal. 595; *Sires v. Sires*, 43 S.C. 266, 21 S.E. 115.

No evidence was introduced as to the value in December 1929 of the decedent's stock in the Detroit Properties Corporation. The balance sheet for December 31, 1928, discloses that the corporation had a small surplus. It was testified that the corporation was then solvent. It is clear that its assets had become frozen, and that, by reason of the panic in the fall of 1929, additional money could not be raised to supply the necessary working capital. On the other hand, it appears that the stockholders and not the creditors of the corporation secured the appointment of a receiver in 1930, and that this was done for the purpose of protecting their interests as stockholders. This is evidence that the stock had value. How much we do not know. This sale of the stock was made by the decedent to his brother-in-law without any prior negotiations. The proposition was made at a social gathering and on the 30th day of December. The brother-in-law testified that when asked to buy the stock for one dollar he stated he would buy anything at that price. We are of opinion that much of what we have said relative to the transaction with Stephens applies equally here, and we do not think the evidence is sufficient to overcome the respondent's determination.

Reviewed by the Board.

*Judgment will be entered for the respondent.*