*Decision will be entered under Rule 50.*

GENERAL SECURITIES COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82188.    Promulgated August 16, 1938.

*Stephen H. Hart, Esq.*, and *Richard M. Davis, Esq.*, for the petitioner.

*Thomas R. Charshee, Esq., John D. Kiley, Esq.*, and *Leslie H. Rushbrook, Esq.*, for the respondent.

OPINION.

DISNEY: The Commissioner determined a deficiency in income tax against the petitioner for the year 1932, in the amount of $9,101.58, all of which is in controversy.

The errors assigned are, that the Commissioner, respondent herein, "erroneously disallowed losses amounting to $103,320, sustained by the petitioner during the calendar year 1932 by reason of sales of various securities made by this petitioner to Boettcher Realty Company", and that the respondent erroneously held that "since Boettcher Realty Company is controlled by the same stockholders as General Securities Company, the transfer of assets resulted in no change of beneficial interest, and no loss is allowable."

In the petition there are two sales of stock mentioned on which, deductible losses are claimed. One was for a loss on a sale January 18, 1932, of 2,500 shares of American Beet Sugar Co. 7 percent preferred stock. However, only 1,400 shares of the stock had been held by petitioner for more than two years prior to the date of the sale and the petitioner now claims only the right to deduct the loss on the 1,400 shares, which loss is alleged to be $67,870. The other loss for which claim was made in the petition was on a sale of 900 shares of the capital stock of the Traylor Vibrator Co. No evidence, at the hearing, was offered as to this latter loss and no claim therefor is now made, since the claimed loss on the aforesaid 1,400 shares, if sustained, is sufficient in itself to wipe out the alleged deficiency in tax.

The questions for our determination, therefore, are whether or not there was a bona fide sale of the aforesaid 1,400 shares of stock to the Boettcher Realty Co. by the petitioner on January 18, 1932, and, if so, what the fair market value of said shares was at the date of the sale.

Both the General Securities Co., petitioner, and the Boettcher Realty Co. are Colorado corporations and are holding corporations for the Boettcher family. The stockholders of both corporations were substantially the same in 1932 and both then had the same president and vice president.

On January 18, 1932, the petitioner sold to the Boettcher Realty Co. 2,500 shares of 7 percent preferred stock of the American Beet Sugar Co., now known as the American Crystal Sugar Co. The stock was not sold nor offered for sale on the New York Stock Exchange, the only exchange where listed, but was privately sold at $1.50 a share to the Boettcher Realty Co. The payment of the purchase price, $3,750, was made on January 18, 1932, by a check of the Boettcher Realty Co., with attached voucher, in the sum of $7,260.63, which check included payment for certain other shares of stock sold at the same time, but not the subject of the present inquiry.

An original memorandum of the sale was made on the date thereof by petitioner. The memorandum identified the shares sold by stating the dates of issuance of the stock certificates, their numbers and the names in which the certificates were held. The reverse side of the memorandum shows acknowledgment of receipt of the stock by the Boettcher Realty Co., the purchaser, on January 18, 1932, and shows canceled revenue stamps in the sum of $50. Delivery of the stock certificates was made by transferring the certificates from the safety deposit box of the petitioner to that of the Boettcher Realty Co.

At the time of of the sale and delivery of the stock certificates by petitioner, on January 18, 1932, the certificates stood in the names of various firms, companies, or individuals in the brokerage business, only a few of them being in the name of the General Securities Co. The certificates remained in the names in which they stood on January 18, 1932, until April 2, 1935, when they were exchanged for new certificates, issued in the name of the Boettcher Realty Co. The change then was made for the reason that it was learned that proxies would be necessary for the purpose of voting at a stockholders' meeting which was to be held early in June 1935. Dividend action was expected at that time and the necessary proxies could not be obtained unless the stock certificates were in the name of the owner, the Boettcher Realty Co.

It was the custom of both of the corporations to allow certificates to remain in the names in which they stood when acquired until a change in the name or names was necessary or was desired for proxy purposes or dividend action.

Of the 2,500 shares sold by petitioner to the Boettcher Realty Co. on January 18, 1932, 1,400 shares had been acquired on January 1, 1930, or more than two years prior to the sale. The cost of these 1,400 shares (the only ones on which, as before stated, loss is now claimed) to petitioner was $69,970. The sale price to the Boettcher Realty Co. was $2,100 and the alleged loss to the petitioner was, as heretofore stated, $67,870, which, it claimed as a deduction in its income tax return for the calendar year 1932. The claim was disallowed by the respondent.

Due to the fact that the petitioner and the Boettcher Realty Co. had substantially the same stockholders, the respondent in his notice of deficiency determined there was no change of beneficial interest and hence no loss sustained nor any allowable by reason of the sale of said shares.

In our opinion, such determination, in the circumstances of the instant case, is not justified under the law, as decided in numerous cases by the Federal courts and by this Board. The record shows that the petitioner and the Boettcher Realty Co. are separate and

distinct corporations and between them as such the sale involved herein took place. The corporations are separate taxable entities, distinct from their stockholders, and only under exceptional circumstances could their corporate entities be disregarded. *Burnet* v. *Clark*, 287 U. S. 410; *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415; *Eisner* v. *Macomber*, 252 U. S. 189.

Such exceptional circumstances as justify disregard of corporate entities are limited, and mere stock ownership or virtual identity of stockholders between buyer and seller does not justify it. *Edwards Securities Corporation*, 30 B. T. A. 918; affd., 83 Fed. (2d) 1007; *Romie C. Jacks*, 19 B. T. A. 559.

The fact that the petitioner and the Boettcher Realty Co. in 1932 were owned by substantially the same interests or stockholders and had the same president and vice president did not, considered in connection with all other facts, circumstances, and testimony touching the subject, in our opinion, render the transaction ineffective or invalid as a bona fide sale by petitioner of the aforesaid 1,400 shares of American Beet Sugar Co. 7 percent preferred stock to the Boettcher Realty Co. The record does not indicate that the sale by petitioner was made solely for the purpose of avoiding or reducing its tax liability and there is evidence to the contrary. However, it is now definitely and firmly established that a taxpayer may resort to any legal method available to him to diminish the amount of his tax liability. *Gregory* v. *Helvering*, 293 U. S. 465; *Helvering* v. *Brown*, 85 Fed. (2d) 926; *Sawtell* v. *Commissioner*, 82 Fed. (2d) 221; *A. S. Eldridge*, 30 B. T. A. 1322; affd., 79 Fed. (2d) 629; *Edwards Securities Corporation, supra; Lammot du Pont*, 36 B. T. A. 223.

There is evidence, of perhaps doubtful value because not coming from one of the parties to the transaction, to the effect that there was no intent or agreement that the stock sold should be repurchased later. There was, in fact, no repurchase of identically the same stock, but almost two years later the vendor repurchased from the vendee the same class of stock in the same corporation, to the extent of 700 shares. This stock was definitely identified, however, by certificate numbers, as being stock purchased at another time. It was, nevertheless, in our opinion, substantially identical with the stock sold on January 18, 1932. We are not required to follow the mere denial of intent or agreement to repurchase, but only to consider it with other evidence on the subject. Here, however, we think that the long lapse of time before any repurchase and the fact of only partial repurchase of substantially identical stocks even after such lapse of time indicate that there was no bad faith inhering in agreement or intent to repurchase the stock sold, or a substantial equivalent thereof.

After careful consideration of the entire record, we are of the opinion and hold that the sale of the 1,400 shares of stock in question by the petitioner to the Boettcher Realty Co. was a bona fide transaction and sale.

The next issue for our determination is: Was the sale made at their fair market value?

Starting November 28, 1931, it was about 38 weeks or until in August 1932, before sales of American Beet Sugar Co. shares of stock on the New York Stock Exchange totaled as much as 2,500 shares, the number sold January 18, 1932, to the Boettcher Realty Co. by petitioner. During the 38 weeks mentioned there was no week when the volume of shares of said stock sold on the stock exchange approached 600 shares.

The aforesaid 2,500 shares of American Beet Sugar Co. 7 percent preferred stock, of which the 1,400 shares in question were a part, were not offered for sale on the New York Stock Exchange, nor to anyone except the Boettcher Realty Co., to which they were sold at a price ($1.50 per share) designated by the president of both the seller and the purchaser. At the date of the sale in question sugar stocks were weak and there was a bear market on, the bottom of which was not reached until July 1932. No sales of American Beet Sugar Co. 7 percent preferred stock were made on the New York Stock Exchange on January 18, 1932, though then the stock was quoted at $2.50 bid and offered for sale at $2⅞ per share. During the week starting December 27, 1931, 600 shares of the stock were sold, the highest sale price being $3 per share and the lowest $1.50 per share, but how much was sold at each price and on what days the record does not disclose. The price at which shares were sold declined from $3 on Monday, December 28, 1931, to $1.50 on Wednesday, December 30. On December 31 there were no sales of the stock on the stock exchange. During the entire week beginning January 19, 1932, there were 40 shares of the stock sold, the evidence indicating the sales were at $2.50 per share.

The evidence shows that the sale of 600 shares of said stock on the stock market during the week starting December 27, 1931, covered the largest number of said shares sold on the stock market within a week in a period of 38 weeks and that in the week in which the 600 shares were sold, the price declined to $1.50 per share.

Under the conditions existing on the stock exchange market shortly prior to January 18, 1932, and on that date, the petitioner herein did not offer for sale on the said stock exchange the 2,500 shares of stock aforesaid (of which the 1,400 shares in question were a part),

but by or through its president directed its sale to the Boettcher Realty Co. at $1.50 per share, as the fair market value of the same.

In the absence of any sales of said stock on the stock exchange on January 18, 1932, the testimony of experts as to the fair market value of the block of stock sold to the Boettcher Realty Co. was offered and admitted in evidence at the hearing, such, in the circumstances of the case then being deemed proper and now so held. *Heiner* v. *Crosby*, 24 Fed. (2d) 191; *Houghton* v. *Commissioner*, 71 Fed. (2d) 656, 658; *Laird* v. *Commissioner*, 85 Fed. (2d) 598, 599; *Jenkins* v. *Smith*, 21 Fed. Supp. 251.

The testimony of the expert witnesses was uncontradicted and was to the effect that $1.50 per share was on January 18, 1932, the fair market value of the 1,400 shares of stock here involved. Their testimony indicated that the fair market value of the stock was affected and reduced by the quantity offered and that, if the 2,500 shares sold to the Boettcher Realty Co. had been offered on the stock exchange for sale, the price bid for such stock would have been very substantially lowered.

As was said by the court in *Jenkins* v. *Smith, supra:*

It may seem theoretically that a large number of shares in a block should have a value equal to the number of shares times the market value of each share, but here theory is not in accord with actual fact. The explanation may be in the fact that market value does not necessarily reflect true value. But the value designated by the statute is market value, and however illogical that value may be, it is the value which must be ascertained. Intrinsic value may be a more accurate index to use for tax purposes, but, whether it is or not, Congress has chosen to use market value as the base.

After giving due consideration to sales of the stock on the stock exchange and to the prices bid for the stock thereon on dates both prior and subsequent to January 18, 1932, and to the uncontradicted testimony of expert witnesses familiar with and competent to judge of the fair market value of the stock in question (see *Helvering* v. *Kimberly*, 97 Fed. (2d) 433; *Helvering* v. *Safe Deposit & Trust Co. of Baltimore*, 95 Fed. (2d) 806; and *Commissioner* v. *Shattuck*, 97 Fed. (2d) 790—all taken in connection with other facts shown by the record—we are of the opinion, find, and hold that $1.50 per share for the 1,400 shares of the American Beet Sugar Co. 7 percent preferred stock was the fair market value of that stock on January 18, 1932, when it was sold to the Boettcher Realty Co. at that price as aforesaid.

*Decision will be entered under Rule 50.*