WILHELMINA DAUTH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN P. DAUTH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 96882, 96883.   Promulgated November 14, 1940.

*Howard L. Kuttner, Esq.,* and *Samuel Weiss, C. P. A.,* for the petitioners.

*F. S. Gettle, Esq.,* for the respondent.

OPINION.

HARRON: Petitioners contend that the Unidauth Realty Corporation was insolvent on November 17, 1936, the date of dissolution, and that it owed petitioners $19,873.66, the balance in the "Notes Payable" or running account of the corporation with petitioners. Petitioners claim deductions in the year 1936 for loss on their investment in the capital stock of Unidauth and for loss from an uncollectible debt owing to them by the corporation.

Respondent contends that petitioners did not sustain losses upon liquidation of Unidauth. For brevity, respondent's argument is not set forth here, but it will be discussed hereafter.

The question presented is simply whether or not petitioners sustained actual losses on the dissolution of their wholly owned corporation. Respondent disallowed the claimed deductions. The underlying reason for respondent's determination is that, because petitioners owned and controlled Unidauth, their decisions being the decisions of the corporation, certain transactions can not be recognized as arm's length, bona fide transactions producing any real loss to petitioners. Respondent relies upon the principles expressed in *Gregory* v. *Helvering*, 293 U. S. 465; *Griffiths* v. *Commissioner*, 308 U. S. 355; *Higgins* v. *Smith*, 308 U. S. 473.

The record in this case, including evidence covering petitioners' transactions utilizing Unidauth from its creation to its dissolution, requires that all matters relating to the question of whether petitioners sustained actual losses from their investment in and loans to Unidauth be examined. As will be shown later, respondent's claim for increases in the deficiencies must be denied. But in considering the questions at issue two things must be kept in mind: First, that the burden of proof is upon the petitioners to show that they actually

lost the sums of money for which deductions are claimed in order to overcome the prima facie correctness of respondent's original determinations disallowing the deductions; second, that the close relationship between petitioners and their wholly owned corporation requires close scrutiny of the facts. Also, it should be pointed out that the real question for decision is the correctness of respondent's determinations and not the soundness of the reasons which he assigned in his notice of deficiency or of the arguments advanced by him. *Raoul H. Fleischmann*, 40 B. T. A. 672, 681.

Consideration of the facts shows that Unidauth's only substantial business activity consisted of its purchase and sale of the University Avenue property to the Gaines-Roberts Corporation. Thereafter, it owned a purchase money second mortgage on that property from 1929 to 1934, for a period of about five years. The mortgagee paid $4,000 of principal on the mortgage and interest. Unidauth filed income tax returns, kept books, paid salaries and dividends to petitioners, and, in general, functioned as a business corporation with respect to the real estate transactions. It is clear that actual corporations existed in Unidauth and Unavista. The record does not support respondent's broad contention that they should not be regarded as entities separate from their stockholders.

It is the disposition in 1936 of the second mortgage, the satisfaction of a mortgage of $86,000 for $20,000 in cash, which respondent asks us to disregard. If that transaction should be disregarded, then, respondent contends, Unidauth was not insolvent upon dissolution and petitioners did not sustain losses. Respondent asks that the sale of the second mortgage to Unavista be disregarded; that it be held that Unidauth owned an interest in the University Avenue property of a value of $66,000; that this interest passed to petitioners upon Unidauth's dissolution; and, finally, that petitioners realized a gain of $36,126.34 when Unidauth was dissolved.

Petitioner called a witness who was duly qualified to testify upon the value in 1936 of the second mortgage on the University Avenue property. His testimony stands uncontradicted. He testified that the second mortgage, in August of 1936, upon a cash sale, was worth about $24,000, but that it would have been practically impossible to obtain a purchaser for a second mortgage at that time. Petitioners elected to have the title to the University Avenue property held by a corporation, Unavista, when Gaines-Roberts relinquished title. A taxpayer may elect to form corporations for the transaction of business enterprises. If bona fide transactions are conducted by the corporations they may not be disregarded. Unidauth and Unavista were separate and distinct entities. Here the circumstances surrounding the cancellation of the second mortgage upon a payment

of $20,000 by Unavista were not such that it can be concluded that the transaction was not bona fide. Unavista had continued to pay Unidauth interest on the second mortgage from 1934 to 1936. In 1936 the officers of Unavista, petitioners, negotiated the refinancing of the first mortgage and they intended to endeavor to sell the University Avenue property. They found that the property could not be sold subject to two mortgages aggregating $246,000 ($160,000 plus $86,000), and they determined that satisfaction of the second mortgage was necessary. Unavista paid Unidauth $20,000 for the second mortgage, and this was a fair price according to the testimony of petitioner's real estate expert witness. The sale of the second mortgage was consummated as an arm's length transaction. The mere fact that the stockholders of both corporations were the same individuals is not such an "exceptional circumstance" as to render the sale ineffective or invalid as a bona fide sale. It is concluded that full recognition should be given to the sale of the second mortgage for $20,000 and that respondent's claim that petitioners received an equity in a second mortgage of a value of $66,000 upon dissolution of Unidauth is not sustained. Accordingly, respondent's claims for increased deficiencies are denied. *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415; *Dalton* v. *Bowers*, 287 U. S. 404; *General Securities Co.*, 38 B. T. A. 330.

However, the above conclusion does not dispose of the question, for the following reasons. Petitioners claim that Unidauth owed them a total sum of $19,873.66 on the basis of a book balance in the "Notes Payable" account. The credits in this account aggregated $218,493.81, representing an amount due petitioners from Unidauth. $81,517.50 of the credits represents the "purchase price" of securities which Unidauth is said to have purchased from petitioners in 1929 and which were sold, apparently, a few days thereafter for $49,157.50, which sum clearly was received by petitioners from Unidauth in January of 1930. If that transaction was not a bona fide, arm's length transaction between petitioners and their wholly owned corporation it should be disregarded in our consideration of whether petitioners actually were losers of money upon the dissolution of Unidauth. Eliminating the credits and debits from the "Notes Payable" account relating to that transaction in stocks, the facts are that Unidauth was not indebted to petitioner upon dissolution, and, further, that just prior to dissolution Unidauth paid to petitioners a total of $25,500, with the result that petitioners received $12,486.34 in excess of all valid indebtedness of Unidauth. Under such facts it can not be held that petitioners sustained losses on loans or on their investment in the stock of Unidauth. Therefore, consideration is now given to the 1929 stock transaction.

In 1929 Unidauth sold the University Avenue property to Gaines-Roberts at a profit. Petitioners owned stocks which they had previously acquired jointly at a cost of $81,517.50. It appears that the market prices of these stocks in December of 1929 was much less than the cost prices. On the books of Unidauth a notation of a purported sale of the stocks to Unidauth appears, and a credit was made in the "Notes Payable" account as of December 24, 1929, for $81,517.50, cost to petitioners. Notation of a resale appears on December 31, 1929, by Unidauth to Theodore Prince & Co., brokers, for $49,157.50. Profit and loss is charged with a loss of $32,360. In January of 1930 the "Notes Payable" account shows that about $51,000 in cash was paid to petitioners. These are the only facts in the record relating to the transaction. But from these facts it appears that the transaction may have been for the purpose of enabling Unidauth to show a loss on its income tax return for 1929 to offset a profit from the sale of the University Avenue property. The question is whether there was a bona fide sale of the stocks to Unidauth in 1929 which created a debt of Unidauth to petitioners in the sum of $81,517.50.

It has been shown above that determination of the main questions turns upon the above question. Petitioners claim that at the end of the life of Unidauth the net result of their financial interests in that corporation showed a loss, and deductions therefore are claimed. It is proper and necessary to examine all matters which have a bearing upon the question of whether petitioners sustained actual losses upon the liquidation of Unidauth in 1936. "To secure a deduction, the statute requires that an actual loss be sustained. An actual loss is not sustained unless when the entire transaction is concluded the taxpayer is poorer to the extent of the loss claimed; * * * Taxation is concerned with realities, and no loss is deductible which is not real." *Schoenberg v. Commissioner,* 77 Fed. (2d) 446, 449; certiorari denied, 296 U. S. 586.

The courts have held that a loss is deductible upon a bona fide sale by an individual to a wholly owned corporation. *Jones* v. *Helvering,* 71 Fed. (2d) 214; *Commissioner* v. *Eldridge,* 79 Fed. (2d) 629. Where there is a bona fide sale it may be made without a cash payment at the time and it may create an indebtedness. The mere fact that the purpose of the transaction may be to minimize taxes does not make the transaction ineffective if it is in all other respects a bona fide transaction. But if there is no real transfer of title, no complete relinquishment of dominion and control to the purchaser by the seller, the transaction is not effective to constitute a bona fide sale the consequences of which may be given effect for purposes of tax benefits by way of providing a basis for a deduction.

*Wickwire* v. *United States*, 27 Fed. Supp. 724; *Pierre S. du Pont*, 37 B. T. A. 1198; *Shoenberg* v. *Commissioner*, *supra*; *Higgins* v. *Smith*, *supra*. The test to determine whether a transaction is a bona fide transaction is described by the term "arm's length", or, in other words, Was the transaction carried out in the way that the ordinary parties to a business transaction would deal with each other?

When actual market prices play no part in a sale of stocks a question at once arises whether the transaction is bona fide. It is not reasonable that a seller is willing to sell property at less than its worth, or that a buyer is willing to buy for more than the reasonable worth of property. Where the facts show that the parties to a sale demonstrate such a lack of interest as to the price at which one sells to another that the buyer purportedly gives a sum greatly in excess of the worth of the property, such facts indicate that what was done was not a real business transaction and "was not intended to have the usual results and significance of a bona fide business deal." *Pierre S. du Pont*, *supra*, p. 1242. Here petitioners, the sole stockholders of Unidauth, could establish an apparent loss to Unidauth by offering to sell and selling the stocks in question at cost to them at a time when Unidauth, selling the stocks on the market, would realize a loss. The effect was to give to their wholly owned corporation the benefit of a loss which, otherwise, they would be entitled to realize. It mattered not to petitioners, because they expected to receive reimbursement of the full cost of the securities to them from Unidauth from its earnings.

Under such circumstances it must be held that the purported sale in 1929 was not a bona fide sale effective to create a valid debt from Unidauth in the amount of the agreed purchase price and effective later, in the taxable year, to support petitioners' claims that they sustained losses from their transactions with and investments in Unidauth. There is not enough of substance in the stock deal in 1929 finally to determine that petitioners were losers in fact of the sums of money claimed upon the dissolution of Unidauth. *Higgins* v. *Smith*, *supra*. See also *Rubay Co.*, 9 B. T. A. 133; *John M. Burdine Realty Co.*, 20 B. T. A. 54; *Grace A. Cowan, Executrix*, 30 B. T. A. 296; *William H. Albers*, 33 B. T. A. 373. Unidauth may have been no more than an agent of petitioners, selling the stock in question and remitting the proceeds of the sale to them soon after the sale through a brokerage firm. Or, if it could be held that there was a sale, then Unidauth can not be held to have owed petitioners, for purposes of their tax question here, more than the fair market value of the stock, and from the record it was no more than $49,157.50. Then the transaction cancels itself out, for Unidauth

paid that sum to petitioners. In any event, it is concluded that the stock transaction in 1929 must be disregarded in determining whether or not petitioners sustained losses from a debt of Unidauth and investment in stock of Unidauth upon its dissolution. In the findings of fact the effect of eliminating the transaction is shown, and the result is that petitioners received from Unidauth just prior to its dissolution in 1936 more than the total of the balance actually owing to petitioners in the "Notes Payable" account and of their capital investment. Respondent's disallowance of the loss deductions is sustained. Decisions of deficiencies will be entered in the amounts determined by respondent in the notice of deficiency.

*Decision will be entered for the respondent.*