David L. Wilkoff v. Commissioner.
Wilkoff v. Commissioner
Docket No. 4278.
United States Tax Court
1947 Tax Ct. Memo LEXIS 319; 6 T.C.M. (CCH) 118; T.C.M. (RIA) 47026; February 7, 1947
*319 Harry Friedman, Esq., for the petitioner. R. Bruce Jones, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent has determined deficiencies in income tax for the years 1940 and 1941 in the respective amounts of $26,268.46 and $164,925.28. The first question is whether the wife and children of petitioner were stockholders in a corporation. Respondent has determined that they were not, and that the entire capital gain realized upon the liquidation of a corporation, Wilkoff Company, is taxable to petitioner. The second question is whether an alleged partnership consisting of petitioner and his wife and children existed. Respondent has included all of the earnings reported as partnership earnings in petitioner's income. Petitioner filed his returns with the collector for the tweny-third district of Pennsylvania. Findings of Fact Issue I. Petitioner resides in Pittsburgh. His wife is Sarah Wilkoff. His brother-in-law is Leonard Krieger. His children are Robert K. Wilkoff and Winifred J. Diamondstone. Petitioner was engaged in the scrap metal business for several years prior to 1936, either as an individual or as *320 partner with others, exclusive of his family. On January 1, 1936, a corporation was organized under the name of David L. Wilkoff Company, to engage in the business of buying, selling, and trading as a principal in scrap iron, steel, metals, and incidentals thereto; and the corporation actively engaged in that business thereafter. David L. Wilkoff Company is still in business. The authorized capital of the corporation was $20,000. However, only five shares were subscribed at the time of incorporation; David L. Wilkoff, three shares; Sarah Wilkoff, one share; and Leonard Krieger, one share. The minutes of the corporation, authorizing the issue, recited that cash was paid by the subscribers on the basis issued, but the opening entries on the accounts of the corporation do not show that to be a fact. Rather the opening entries show that David Wilkoff advanced $373.32 cash, and $500 was entered as "Subscriptions Receivable." There are no entries on the books crediting Sarah or Leonard Krieger with payments for their stock, the subscription price being $100. In February of 1937 Sarah Wilkoff and Leonard Krieger subscribed for ten additional shares each at a cost of $1,000 per share, the *321 shares to be paid for by October 15, 1937, and not to be issued until paid for in full. On October 7, 1937, a certificate for ten shares was issued in the name of Sarah; and on October 11, 1937, a certificate for ten shares was issued in the name of Leonard. On October 15, 1937, the corporation declared a dividend of $17,000 based on estimated income. The dividend was distributed on December 15, 1937. Sarah Wilkoff received as a dividend $7,480. She turned over that amount to petitioner as payment on the ten shares of stock. The corporation did not pay any dividends in 1936, 1938, 1939, or 1940; only in 1937. On January 9, 1939, David L. Wilkoff acquired the shares of stock outstanding in the name of Leonard Krieger on the books of the corporation. A certificate of stock was issued dated February 10, 1939, in the name of Robert Karl Wilkoff. A certificate of stock was issued dated June 25, 1940, in the name of W. J. Diamondstone. According to the stock record of the corporation, certificates of stock had been issued at various times to and including June 25, 1940, representing 25 shares; and on June 25, 1940, six stood in the name of petitioner; four in the name of Robert; *322 four in the name of Winifred; and eleven in the name of Sarah. On September 28, 1940, at a meeting of the directors, it was resolved that the corporation should dissolve and that all of the assets should be transferred to a partnership consisting of petitioner and the three other members of his family. The directors consisted of petitioner, his wife, and Elizabeth Marr, an employee. It was understood that the proposed liquidation of the corporation would not involve an actual transfer of the assets of the corporation to David, Sarah, and Robert Wilkoff and Winifred J. Diamondstone, but that the business would be continued in the form of a partnership as of Cotober 1, 1940. The balance sheet of the corporation showed the following assets and liabilities as of September 30, 1940: ASSETS
Cash
$ 16,342.15
Accounts receivable
128,099.26
Loans receivable
20,139.60
Miscellaneous
$ 2,110.00
P. J. Alson
70.60
Sarah Wilkoff
10,250.00
David L. Wilkoff
4,444.00
F. K. Aker
3,265.00
Furniture and fixtures (not depre-
ciated)
1,217.38
TOTAL
$165,798.39
LIABILITIES
Accounts payable
$ 71,358.53
Accrued Expenses and Freight
3,805.52
Accrued Taxes
27,390.03
Adjustment for accrued taxes
(made later)
1,996.05
Reserve for depreciation
441.50
$104,991.63
Capital stock
2,500.00
Paid in surplus
18,000.00
Earned surplus
40,306.76
TOTAL
$165,798.39
*323 A partnership agreement, dated September 30, 1940, was signed by David, Sarah, and Robert Wilkoff, and Winifred. It provides that the parties shall engage as partners in a business of buying, selling, trading and dealing in scrap iron, steel, metals, and all incidentals thereto, under the name of David L. Wilkoff Company; that the term of the partnership shall begin on October 1, 1940 and shall end on September 30, 1950; that the cash capital of the partnership shall be $62,802.81, and that each party shall contribute thereto upon the execution of the agreement in cash or other assets as follows: Sarah Wilkoff
$27,633.24
David Wilkoff
15,072.67
Robert Wilkoff
10,048.45
Winifred Diamondstone
10,048.45
The partnership agreement provided, inter alia, as follows: EIGHTH. That David L. Wilkoff shall be designated as the managing partner of the partnership and shall devote his time exclusively to the partnership business and shall at all times be in charge of the partnership books, records and transactions of the partnership. The other partners shall be required to devote as much time as may be necessary to the business of the partnership but shall not be required *324 to devote their time exclusively to the said business. NINTH. The said David L. Wilkoff shall be entitled to draw such salary for the services which he renders by the devotion of his exclusive time to the business of the partnership as may from time to time be determined by the partners. Such salary shall not be included in his proportionate distributive share of the partnership and such salary as received by him shall be deemed to be payment to him for the services which he is rendering to the partnership by devoting his exclusive time to the said business, and shall be paid to him over and above such proportionate distributive share of the profits of the partnership which he is entitled to receive. This salary shall be set at any period during each calendar year and may be changed from time to time according to the amount of business which may be produced or procured by the said David L. Wilkoff. TENTH. Each party shall at all times: a. Pay and satisfy his own personal debts. b. Inform the other parties of all of his work for, and transactions on behalf of, the partnership. c. Neither assign, mortgage, nor sell his share in the partnership, nor any part thereof, nor enter *325 into any agreement as a result of which any person, firm, association, or corporation, shall become interested with him or her therein. ELEVENTH. That on December 31st of each year, or as soon thereafter as may be convenient, a full, true and accurate account shall be made in writing of all of the assets and liabilities of the partnership, and all of its receipts and disbursements, and the interest of each party in the capital and other assets of the partnership, and in the net profits thereof, shall be ascertained, and the amount of net profits actually and without contingency earned, or the amount of net loss sustained, shall, thereupon, be respectively credited or debited on the books of account of the partnership to the respective parties in the following proportions: a. Sarah Wilkoff
44%
David L. Wilkoff
24%
Robert Karl Wilkoff
16%
Winifred J. Diamondstone
16%
b. For the purpose of determining the proportionate distribution of profits or losses arising to the partners, the salary paid to David L. Wilkoff during the year shall be considered as an expense of the partnership and shall not be included in the proportionate share of the net profits distributed *326 to the said David L. Wilkoff. * * * * *
Certificate of registration of petitioner and the other parties to said agreement under the Fictitious Names Act of the Commonwealth of Pennsylvania was issued at some time after October 1, 1940. The business was recognized as a partnership under the laws of Pennsylvania and was conducted from September 30, 1940, under a mercantile license issued to the partnership. Social Security and Unemployment Tax return filed as partnerships were accepted by the respondent. The company filed a partnership return of income on Form 1065 for the period September 30, 1940 to December 31, 1940, and for the calendar year 1941 with the collector of internal revenue, Pittsburgh, Pennsylvania. From September 30, 1940 through December 31, 1941, the business carried on by David L. Wilkoff Company, a partnership, was the same business conducted by David L. Wilkoff Company a corporation. There was no interruption of the business and no actual distribution of assets to anyone. During the entire period of the existence of the corporation and the partnership, David L. Wilkoff was in control and in general management of the business, making the contacts and securing *327 the contracts. In their individual returns, each member of the Wilkoff family reported a proportionate part of the gain from the alleged liquidation of the corporation, and duly paid tax thereon. The total gain reported by Sarah and petitioner's son and daughter, in their three individual returns, was $16,280.77. Respondent determined that such total amount is taxable to petitioner and has included the above sum in his 1940 income. Accounts were opened as of October 11, 1940 for the alleged partnership. The balance sheet of the alleged partnership as of October 11, 1940 showed the same assets as were shown on the corporation balance sheet as of September 30, 1940, totalling $165,798.39; and the same liabilities, totalling $165,798.39. The only difference between the two balance sheets is that in lieu of the capital stock and surplus accounts shown on the corporation balance sheet, there appeared on the "partnership" balance sheet four capital accounts totalling the same amount as the capital stock and surplus accounts. On the October 11, 1940 balance sheet capital accounts were stated to be: Sarah Wilkoff, capital account
$26,754.98
David L. Wilkoff, capital account
14,593.62
Robert K. Wilkoff, capital account
9,729.08
Winifred J. Diamondstone
9,729.08
*328 Separate accounts were set up on the "partnership" books for each of the alleged partners showing the amounts they allegedly contributed to said business. Thereafter distributive shares of the profits of the business were credited to the individual accounts for the periods October 1, 1940 to December 31, 1940, and the calendar year 1941 as follows: 10/1/40 to 12/31/40
1941
Petitioner
$11,356.31
+ $9,000 salary
$ 72,991.19
+ $50,000 salary
Sarah Wilkoff
20,819.90
133,817.18
Robert K. Wilkoff
7,570.78
48,660.79
Winifred Diamondstone
7,570.78
48,660.79
The following named persons were employees of the corporation from the period January 1, 1940 to September 30, 1940 and drew compensation therefor in the form of salaries as set out herein: David L. Wilkoff - President
$37,500.00
Nathan Kann - Traffic and inspec-
tion
500.00
Myron J. Wilkoff - Traffic and inspec-
tion
500.00
Elizabeth Marr - Office mgr.-bkkpr.
1,565.00
Audrey Axelrod - Stenographer
842.00
Janet Chreiman - Telephone opera-
tor-typist
679.00
Ruth Morse - Stenographer
60.00
$43,298.50
The employees of the David L. Wilkoff Company, alleged *329 partnership, listed below, were all of the employees and they drew compensation for services rendered as stated below. None of the alleged partners, except the petitioner, rendered any service to the partnership nor were paid a salary. 10/ 1/40 to
Year
Position
12/31/40
1941
Elizabeth Marr - Office Manager, Bookkeeper
$705.00
$2,970.00
Nathan Kann - Traffic and Inspection
590.00
2,885.00
Audrey Axelrod - Assistant Bookkeeper
412.00
1,700.00
Ruth Morse - Stenographer
375.00
Myron J. Wilkoff - Traffic and Inspection
750.00
1,250.00
Virginia Weichel - Stenographer, Phone
195.00
933.00
Helen Felton - Stenographer, Phone
1,255.00
Lillian Tyner - Stenographer, Phone
45.00
Evelyn Klein - Stenographer, Phone
60.00
Martha Westwood - Stenographer, Phone
195.00
Neither Sarah Wilkoff, Robert K. Wilkoff nor Winifred J. Diamondstone were authorized at the bank to draw checks on the Partnership Account and did not draw any. Petitioner, his wife, son and daughter withdrew substantial portions of the earnings of said business in accordance with said agreement. The withdrawals by them for the period of Cotober 1, 1940 to December 31, 1940 were: *330 Petitioner
$11,054.40
Sarah Wilkoff
27,850.00
Robert K. Wilkoff
Winifred J. Diamondstone
750.00
and for the year 1941 were: Petitioner
$ 3,644.90
Sarah Wilkoff
94,733.15
Robert K. Wilkoff
4,763.10
Winifred J. Diamondstone
6,666.60
Petitioner's wife has maintained a separate bank account since prior to the formation of the corporation in 1936. The two children also had separate bank accounts. The monies withdrawn from said business by petitioner's wife and children were deposited in their respective bank accounts. Petitioner at no time had authorization to draw checks on the accounts of his wife and children. During 1941, Sarah Wilkoff drew checks upon her own bank account totalling $44,100. The total sum of $44,100 represents money returned to the control of David L. Wilkoff and used in the partnership business. They were not credited to Mrs. Sarah Wilkoff's capital account nor entered on the partnership records in 1941 but were credited to her by adjusting entry in the partnership books in 1943, two years later. During 1941, Sarah drew from the partnership the total amount of $94,733.15. From September 30, 1940 through December 31, 1941, Sarah *331 Wilkoff, in addition to the checks hereinabove listed, expended a substantial amount of the profits received from the partnership in payment of household and living expenses, medical fees for her crippled son and purchase of a family home. Earnings of the Wilkoff Company for the last three months of 1940 were reported on Form 1065, Partnership Return. The adjusted net earnings for three months were $56,417.97. The net earnings of the business for 1941 were $354,129.95. Respondent has added to the income of petitioner the total amounts which his wife and two children reported in their individual returns, $36,061.66 for 1940, and $231,388.76 for 1941. The business conducted by the Wilkoff Company was that of buying and reselling scrap metal. According to the income tax return which was filed for the Company for the entire year of 1941, "merchandise" of a large volume was purchased and resold as follows: Gross receipts
$2,972,293.38
Merchandise purchased,
cost
$2,499,075.66
Freight, cost
70,255.58
2,569,331.24
Gross profit
$ 402,962.14 The 1941 return showed that the expenses of the business were as follows: Salaries and wages
$11,293.00
Rent, depreciation, etc.
4,045.27
Selling expense
11,563.37
Travel and entertaining
13,885.45
Tel. & tel.
1,750.80
Office expenses, etc.
6,330.72
Total deductions
$48,868.61
*332 The business of Wilkoff Company was a buying and selling business dependent upon the personal skill of petitioner. It required cash for its operations. The business was conducted on rented premises. The steps taken in 1940 to change the form of the business from corporation to partnership had no business purpose. The alleged formation of a partnership did not bring about or represent any change in the conduct or operation of the business which continued in exactly the same way after the execution of the "partnership agreement" as before. Petitioner has at all times, before and after September 30, 1940, operated and controlled the business of Wilkoff Company, and he has at all times had complete control over its earnings. No services were rendered to the business by Sarah, Robert, or Winifred, before or after September 30, 1940. The business in question was developed by petitioner who, apparently, started with a small amount of his own cash, and who accumulated a substantial amount of cash through accumulations of the earnings which resulted from his personal efforts. Sarah Wilkoff has never contributed to the capital of the business, before or after September 30, 1940, any moneys *333 or properties of her own originating with her or coming from any source other than her husband, the petitioner. Petitioner's two children have never contributed any moneys or properties to the business originating with themselves or coming from any source other than their father, the petitioner. Sarah Wilkoff did not make any contribution to the capital of the corporation when it was organized in 1936. She did not purchase stock of the corporation thereafter with any funds originating with herself. Sarah and Robert Wilkoff and Winifred Diamondstone were not bona fide stockholders of Wilkoff Company, the corporation. Petitioner was the sole stockholder as of September 30, 1940. Petitioner's wife and two children did not enter into a partnership in October, 1940, with petitioner for the conduct of the business known as Wilkoff Company. A bona fide partnership, comprised of petitioner, his wife and two children, was not created, effective for purposes of the Federal income tax. The decision to terminate the corporation by agreement of stockholders resulted only in termination of the corporation as a taxable entity, and thereafter, for purposes of the Federal income tax, the business *334 conducted under the name of Wilkoff Company was a sole proprietorship of petitioner. Opinion Respondent, by his determination, his pleadings, and a stipulation, does not recognize the wife and two children of petitioner as bona fide owners of stock of the corporation, Wilkoff Company. Respondent's contention is that petitioner was the sole stockholder of the corporation as of September 30, 1940. Respondent, by the same, does not recognize the existence of a partnership consisting of petitioner and his wife and two children for purposes of Federal income tax. Accordingly, his determinations are that all of the gain on the alleged liquidation of the corporation, and all of the income of the business which was reported as partnership income for the periods involved are taxable to petitioner. These determinations are prima facie correct and petitioner has the burden of overcoming them. The burden of proof is upon him. Petitioner has failed to introduce evidence to prove that the wife and two children of petitioner were bona fide owners of stock of the corporation. The only evidence on the point is that certificates of stock were issued in their names at different times. There is *335 no evidence that Sarah paid $100 for one share issued in her name when the corporation was organized. The issuance of that share in her name appears to have represented the issuance of one share of merely qualifying stock, there being only two other persons to serve as stockholders. The issuance of ten shares of stock in the name of petitioner's wife on October 7, 1937 was attended by circumstances which show that the transaction must be scrutinized carefully. The corporation was family owned and was controlled by petitioner. The point here is that the issuance of twenty shares of stock in the names of petitioner's wife and brother-in-law is not shown to have been an arms-length transaction between a corporation desiring to increase its capital and persons desiring to invest capital. Since the corporation was controlled by petitioner in 1937, an inescapable conclusion in the absence of evidence to the contrary, petitioner's decisions were the decisions of the corporation. Wilhelmina Dauth, 42 B.T.A. 1181, 1185. A stockholder of a wholly owned or family owned corporation may deal with the corporation at armslength, but the relationship requires close examination of the *336 facts, and such examination must be made where, as here, the respondent has made a determination which does not recognize a transaction as real. We must consider the question with recognition that the burden upon the petitioner is twofold; to meet his burden of proof, and to show that the transaction under attack was carried out in the way that the ordinary parties to a business transaction would deal with each other. Wilhelmina Dauth, supra, pp. 1185 and 1189. What, then, was the transaction? Prior to October 1, 1937, the stock of the corporation stood three shares in petitioner's name, one share in his wife's name, and one share in his brother-in-law's name. The stock had been issued at $100 a share, the subscription price. On October 7, and 11, 1937, ten shares each were issued in the names of Sarah and Leonard to be paid for by October 15. When the stock was issued bookkeeping entries were made on the corporation's books crediting capital $2,000 and surplus $18,000, at the rate of $1,000 per share. On October 15, the corporation declared a dividend of $17,000, which was paid. Checks of the corporation were made in the amounts of $2,040 to petitioner, and $7,480, *337 each, to Sarah and Leonard, the amounts being the allocation of $17,000 to three shares, eleven shares, and eleven shares. Sarah turned over the proceeds of the check payable to her to petitioner. Thus, he received 14/25ths of the distribution although only three shares of stock stood in his name. In the absence of evidence to explain satisfactorily all of the transaction, it must be concluded that each step was part of a single plan. Of its purpose we do not speculate; but it is evident that the corporation did not receive $20,000 capital for twenty shares of capital stock. Each step followed the other in short intervals of time, a few days, and the date October 15 was the date when two events took place. The new stock was to be fully paid for on that date. It happened, also, that a dividend of $17,000 was declared on that date. The coincidence of events resulted in an offset of $17,000 against $20,000. At the most, the corporation could have received only $3,000. The petitioner has not presented evidence to show clearly whether petitioner in fact paid $10,000 to his wife or to the corporation before or on October 15; and if he did, there is no evidence that she ever paid to him any *338 sum above the $7,480 which passed from the corporation to petitioner through her hands. Such limited facts as are of record here do not support a finding of fact that the corporation sold ten shares of capital stock to Sarah Wilkoff in October, 1937. The facts indicate that what was done did not bring about an increase in the capital of the corporation in the amount of $10,000 or $20,000 upon a bona fide issuance of capital stock. If petitioner did in fact advance to the corporation any cash, directly or through his wife, the advance was offset by all he received under a purported declaration of a dividend. He received, in fact, $9,520. Neither the issuance of the new stock nor the purported dividend of $17,000 represented "arms-length" transactions. See the following cases where it has been held that transactions were not bona fide and were not recognized for tax purposes: Wilhelmina Dauth, supra; Joseph Blumenthal, 30 B.T.A. 125; Guaranty Trust Co. (N. Y.) et al., 35 B.T.A. 916; aff'd., 98 Fed. (2d) 62; Johnson v. Commissioner, 86 Fed. (2d) 710; Theodore C. Jackson et al., Administrators, 32 B.T.A. 470; *339 Jackson v. Commissioner, 64 Fed. (2d) 359; Shoenberg v. Commissioner, 77 Fed. (2d) 446; Commissioner v. Dyer, 74 Fed. (2d) 685; S. A. MacQueen Co., 67 Fed. (2d) 857; Pierre S. DuPont, 37 B.T.A. 1198; aff'd., 118 Fed. (2d) 544; A. L. Lusthaus, 3 T.C. 540; aff'd., 327 U.S. 293. If it could be assumed that there had been a bona fide sale by the corporation of ten shares of stock to Sarah, we should have to consider whether she received the stock into her unfettered dominion and control. On this point there is no evidence. The petitioner did not declare any more "dividends" after the instance of the declaration of October 15, 1937. Thus the situation is difficult. If a bona fide loan were made to Sarah, the fact that she immediately turned over dividends to petitioner would not necessarily be evidence of a lack of dominion and control over the stock and of full enjoyment of all of the incidents of ownership, if there were other evidence of the enjoyment of all of the rights of ownership. But there is no evidence of that class. Petitioner has not introduced evidence to explain the *340 fixing of $1,000 a share on the stock. There is no evidence that Sarah could have done as she wished with the stock issued in her name. Petitioner has failed to prove that Sarah was the owner of ten or eleven shares of stock of the corporation and it has been found as a fact that she was not a bona fide stockholder. With respect to the stock standing in the names of the children, the contention is that petitioner gave four shares to each of his children. There is no evidence to support a finding of fact that bona fide gifts of stock were made to the children. While the filing of gift tax returns may not be the best evidence of the making of a gift, and under certain surrounding facts such returns are not evidence of bona fide gifts, whatever weight might be given to the filing of gift tax returns is not present here. No gift tax returns were filed. The essential elements of a valid gift are well known. See Adolph Weil, 31 B.T.A. 899; aff'd., 82 Fed. (2d) 561. Petitioner did not offer any evidence on the point of the validity of the alleged gift, and lacking evidence that there was a gift in praesenti irrevocably transferring title to and control over the *341 subject matter of the gift, we can not find as a fact that petitioner made gifts of four shares of stock each to his two children. For failure of proof it has been found as a fact that the children were not bona fide stockholders. See Howard B. Lawton, 6 T.C. 1093. Upon the holdings above, and findings of fact, it is held that petitioner is taxable upon the entire gain on the liquidation of the corporation. Respondent's determination is sustained. With respect to the taxation of the income of the business conducted under the name of Wilkoff Company, which was reported as partnership income, this case is controlled by Commissioner v. Tower, 327 U.S. 280; and Lusthaus v. Commissioner, supra. See also, James L. Pritchard, 7 T.C. 1228 (No. 144); Lowry v. Commissioner, 154 Fed. (2d) 448; Thorrez v. Commissioner, 155 Fed. (2d) 791. Those alleged to be members of a partnership, with petitioner, his wife and two children, did not contribute services to the business or capital originating with themselves. It appears that the son was an invalid and the daughter lived in Ohio. Under the agreement, petitioner had complete control *342 over the conduct and management of the business and the earnings. He was to receive salary, but no amount was fixed. The amount of his salary could be changed from time to time "according to the amount of business * * * procured by him." The earnings of the business were attributable solely to petitioner's skill in buying and selling scrap metal. The long-settled doctrine that income is taxed to the person who earns the income is the paramount reason for sustaining respondent's determination. Lucas v. Earl, 281 U.S. 111. The arrangement here presented an effort to reallocate income among the members of the family group. Helvering v. Clifford, 309 U.S. 331. It is held that petitioner is taxable on the entire earnings of the Wilkoff Company business. Decision will be entered for the respondent.